[Civ. No. 15280.   Second Dist., Div. Three.   Feb. 11, 1947.]

E. M. THACKER, Respondent, v. AMERICAN FOUNDRY
(a Partnership) et al., Appellants.

Julius V. Patrosso for Appellants.

Dechter, Hoyt, Pines & Walsh, Harry A. Pines and Adele Walsh for Respondent.

KINCAID, J. pro tem.—Defendants herein appeal from a judgment in plaintiff's favor in the sum of $4,800 in an action seeking damages for breach of a contract of employment.

The first question presented for decision is, assuming that the parties entered into a contract upon the terms al-

leged in the complaint and found by the trial court, was such contract illegal and void as violative of the Salary Stabilization Act of 1942, in that the compensation therein provided to be paid plaintiff by the defendants was not approved by the Commissioner of Internal Revenue of the United States. The answer to this query is in the negative.

Plaintiff's complaint is in two counts, the first alleging an express oral contract of employment whereby, on May 10, 1943, plaintiff was employed to establish and act as general manager of a newly created ''magnesium division'' of the defendant American Foundry, a partnership composed of the individual defendants, for which services he was to receive a sum of not less than $500 per month, plus his expenses and 20 per cent of the profits of said magnesium division. The second cause of action was upon a common count for the reasonable value of the services rendered defendants by plaintiff.

Defendants by their answer admit that plaintiff was employed to assist in the installation and operation of a magnesium division of their company at a salary of $500 per month, and his necessary expenses, but deny that he was to receive any additional compensation by way of a percentage of profits or otherwise, or that any sum is due him. As a special affirmative defense the defendants allege that the agreement sued upon is illegal and void as violative of the act of the Congress of the United States, known as the Stabilization Act of 1942 (Public Law 729, 77th Congress, Second Session; 50 U.S.C.A. App., §§ 961-971) and Executive Order No. 9250 promulgated by the President of the United States on August 3, 1942, pursuant thereto, in that no application was made to or obtained from the Commissioner of Internal Revenue for authority to pay to plaintiff compensation as set forth in his complaint.

The trial court, on substantial evidence, found that the parties hereto did enter into the oral agreement as alleged in the first cause of action of plaintiff's complaint and that plaintiff performed the services agreed by him to be performed until on or about August 15, 1944, when his employment agreement with defendants was repudiated and terminated by the latter. As a result of this severance of the contractual relationship the court found the plaintiff to have been damaged in a manner and amount hereinafter discussed. The court further found, in effect, that defendants had repeatedly failed to carry out their promise to reduce the oral contract to

writing or to seek the approval of the salary stabilization unit of the Treasury Department of the United States of the terms and conditions of such contract.

It was stipulated at the trial that at all the times here concerned, the defendant American Foundry had in its employ more than 80 employees. The evidence shows, without contradiction, that immediately preceding his employment by defendants the plaintiff was employed by Basic Magnesium Company at a salary of $500 per month; that no application for approval of the compensation found by the trial court to be due under his contract with defendants was ever made to, or secured from, the Commissioner of Internal Revenue of the United States, and that plaintiff was regularly paid a salary of $500 a month during the entire period of his employment by defendants.

The provisions of the Stabilization Act of 1942 which are pertinent to the issues here presented, are as follows: Section 1. "In order to aid in the effective prosecution of the war, the President is authorized and directed, on or before November 1, 1942, to issue a general order stabilizing prices, wages and salaries, affecting the cost of living; and except as otherwise provided in this Act, such stabilization shall so far as practicable be on the basis of the levels which existed on September 15, 1942. . . ." (50 U.S.C.A., App., § 961.)

Section 2. "The President may, from time to time, promulgate such regulations as may be necessary and proper to carry out any of the provisions of this Act; and may exercise any power or authority conferred upon him by this Act through such department, agency, or officer as he shall direct. . . ." (50 U.S.C.A., App., § 962.)

Section 5. "No employer shall pay, and no employee shall receive, wages or salaries in contravention of the regulations promulgated by the President under this Act. . . ." (50 U.S.C.A., App., § 965.)

Section 10. "When used in this Act, the terms 'wages' and 'salaries' shall include additional compensation, on an annual or other basis, paid to employees by their employers for personal services (excluding insurance and pension benefits in a reasonable amount to be determined by the President); but for the purpose of determining wages or salaries for any period prior to September 16, 1942, such additional compensation shall be taken into account only in cases where it has been

customarily paid by employers to their employees.'' (50 U.S.C.A., App., § 970.)

Section 11. ''Any individual, corporation, partnership or association wilfully violating any provision of this Act, or of any regulation promulgated thereunder, shall, upon conviction thereof, be subject to a fine of not more than $1,000, or to imprisonment for not more than one year, or to both such fine and imprisonment.'' (50 A.S.C.A., App., § 971.)

Pursuant to the authority conferred upon him by the foregoing statute, the President under date of October 3, 1942, issued Executive Order No. 9250 (7 Fed. Reg. 7871) by which there was established the Office of Economic Stabilization and the office of director thereof. Pursuant to the authority conferred upon him by this executive order, the Director of Economic Stabilization, on October 27, 1942, issued his Regulations on Wages and Salaries (7 Fed. Reg. 8748), by the provisions of which there was delegated to the Commissioner of Internal Revenue jurisdiction over all salaries in excess of $5,000 per annum, and salaries, regardless of amount, for persons employed in a bona fide administrative, executive or professional capacity. The Commissioner of Internal Revenue was also thereby authorized to prescribe regulations, and to make such rules as might be necessary to carry out the provisions of the regulations issued by the Director of Economic Stabilization. Pursuant to the authority conferred by this last regulation, the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, on October 29, 1942, established within the Bureau of Internal Revenue a Salary Stabilization Unit (7 Fed. Reg. 8820), and, on December 2, 1942, (T.D. 5186, 7 Fed.Reg. 10050) in consonance with the policy and purpose as stated in the Stabilization Act, Executive Order No. 9250, and the regulations promulgated by the Director of Economic Stabilization, all salaries in excess of $5,000 per annum were frozen at the rates in effect on October 3, 1942, and all salaries, regardless of amount, for persons employed in a bona fide administrative, executive or professional capacity were so frozen on October 27, 1942, and it was provided that no increase thereof could be made in excess of these rates, and that no salary for a position created after the ''freeze date'' might be established without first obtaining the approval of the Commissioner of Internal Revenue. It was further provided, as a part of such regulation of December 2, 1942, that: ''An employer who has estab-

lished a new job classification, or who has begun business, after October 3, 1942, must obtain approval of the Commissioner for the payment of salaries for such job classification or in such new business: *Provided, however, That if the salary rates in question are not in excess of those prevailing for similar job classifications within the local area, the approval of the Commissioner is not required."*

On September 4, 1943, T.D. 5295, 8 Fed.Reg. 12429, at p. 12432) during the period plaintiff was employed by defendants under the contract in question, that portion of the regulation of December 2, 1942, immediately preceding and italicized, was superseded by amendment as follows: *"Provided, however, That if the salary rates in question are not in excess of the minimum of those prevailing for similar job classifications within his own organization or if no such rates are available, then within the local area on September 15, 1942, the approval of the Commissioner is not required."* (Italics added.)

It is readily apparent that the terms of plaintiff's employment bring him within the classifications over which jurisdiction is assumed under such regulation, both as earning in excess of $5,000 per annum and as general manager of the magnesium division, thus being in a bona fide executive capacity. It is equally evident that it was the duty of the employer, and not the employee, to file an application seeking the approval of the Commissioner of Internal Revenue of the terms of such employment. This, the evidence shows, defendants consistently failed and refused to do notwithstanding repeated demands on the part of plaintiff that such steps be taken.

Defendants are now in the position whereby, under their affirmative defense of illegality of the employment contract because of the failure to seek or obtain the authority of the Commissioner of Internal Revenue to pay the compensation therein provided, they ask the approval of the court permitting them to accept the benefits of plaintiff's services and, at the same time, retain a portion of the earnings due him therefor. They ask this even though the failure to seek or obtain such approval results from a breach by them of their legal duty to so apply. They assert the instant case is controlled by the well established principle that "performance of a contract cannot be compelled where it would involve a violation of law" (17 C.J.S. p. 964, § 467.) In support of this position

they point out the provisions of the act prohibiting the payment by the employer or the receipt by the employee of wages or salaries in contravention of the regulation as promulgated on penalty of fine or imprisonment.

In pressing this affirmative defense defendants have overlooked an exception to the regulation which it is their duty to negative, by competent evidence, before such defense may become available to them. Concededly, the position of general manager of the magnesium division to which plaintiff was appointed by defendants constituted ''a new job classification.'' Also the establishment for the first time in the history of defendant's foundry business of a division for the manufacture and sale of magnesium may reasonably be interpreted as the beginning of a new business within the purview of the regulation. The approval of the commissioner is not required under the provisions of the regulation to these classes of job if the salary rate provided for it is not in excess of the minimum of those prevailing for similar job classifications within defendant's own organization, or if no such rates are available, then those within the local area on September 15, 1942. The record is silent as to any such evidence and the exception has not been negatived. Under such conditions the trial judge was justified in believing the terms of plaintiff's employment were in consonance with the minimum of those holding similar positions, if any, in defendant's business organization or those within the local area on the prescribed date. Such being the case the approval of the commissioner was not required as a prerequisite to defendant's obligation to pay the amount found by the evidence to be due plaintiff as compensation for his services so rendered.

Defendants have cited the cases of *Claude S. Bennett, Inc.,* v. *Bollinger* (1945), 72 Ga.App. 531 [34 S.E.2d 563]; *Wernhardt* v. *Koenig* (1945), (Dist. Ct. Penn.) 60 F.Supp. 709, and *Kells* v. *Boutross* (1945), 184 Misc. 206 [53 N.Y.S.2d 734], as authority for the illegality of the instant employment contract under the Stabilization Act of 1942, due to the failure to obtain the required authority to pay plaintiff the compensation therein provided. An examination of these cases, however, reveals that the employees there before the courts were neither occupying a position which had been established by the employer as a new job classification nor in a new business. As a consequence the above mentioned exception to the regulation did not apply to them as it here does to plaintiff. As was

said in *Vagim* v. *Brown* (1944), 63 Cal.App.2d 504, 510 [146 P.2d 923, 927] : ''It is the universal rule that where a contract can be performed legally it will not be presumed that the parties intended to perform it in an illegal manner (*Fites* v. *Marsh,* 171 Cal. 487 [153 P. 926]), and where a contract can be performed in a legal manner, as well as in an illegal manner, it will not be declared void because it was in fact performed in an illegal manner. (*Teachout* v. *Bogy,* 175 Cal. 481 [166 P. 319].) This last principle stated is applied where the contract manifests no intent or purpose that it is to be performed in an illegal manner and where also the party complaining does not participate in, or cooperate with the illegal performance. If the method provided for carrying into effect the principal purpose of an agreement has been executed and accepted by both parties, and the whole contract in itself is valid, it will not be permitted to fall because of any supposed invalidity attached to the means adopted. (*Estate of Yoell,* 164 Cal. 540 [129 P. 999].) Since nothing appears on the face of the instrument itself indicating its invalidity the burden was upon the defendant to establish his defense. (*George J. Birkel Co.* v. *Howze,* 12 Cal.App. 645 [108 P. 145].)'' In view of the fact, however, that a reversal of the judgment is indicated on subsequent grounds, defendants may take the opportunity in the event of a new trial, of offering evidence directed toward negativing the exception heretofore described.

Although defendants strongly contend otherwise, the record of the case amply supports the findings of the trial judge to the extent that on or about May 10, 1943, the parties entered into an express oral agreement whereby they would undertake to add a new magnesium division to the iron foundry business then being conducted by defendants; that plaintiff would proceed toward procuring the necessary governmental authorization, would supervise the installation of the new business and would serve as its general manager after commencement of operations; that defendants agreed to pay plaintiff for his services under this agreement the sum of $500 per month, his necessary expenses and a further sum equivalent to 20 per cent of the net profits of the magnesium division of defendants' business, when earned.

Both plaintiff's complaint and the trial court's findings are silent as to any fixed time or term for the duration

of such agreement, nor is there any competent evidence in the case upon which a finding to such effect could be made. Under such a situation the contract of employment was terminable at any time at the option of either party (Lab. Code, § 2922; *Mile* v. *California Growers Wineries* (1941), 45 Cal. App.2d 674 [114 P.2d 651] ; *Adkins* v. *Model Laundry Co.* (1928), 92 Cal.App. 575 [268 P. 939] ; 17 C.J.S. 887, par. 398) unless, as plaintiff contends is the case here, this rule is subject to the exceptions that, where the employment is coupled with an interest, or is entered into upon a consideration, it is presumed that it will continue a reasonable time. Plaintiff cites the cases of *Brown* v. *National Electric Works* (1914), 168 Cal. 336 [143 P. 606] ; *Gregg* v. *McDonald* (1925), 73 Cal.App. 748 [239 P. 373] ; *Seifert* v. *Arnold Brothers, Inc.* (1934), 138 Cal.App. 324 [31 P.2d 1059] ; *Boehm* v. *Spreckels* (1920), 183 Cal. 239 [191 P. 5] ; and several others in support of this theory. In the first place neither the pleadings nor the findings make mention of a failure to continue plaintiff's employment for a reasonable time nor that the term of approximately one year and three months during which plaintiff was so employed was not for a reasonable time. Neither is there pleading, finding nor proof to bring plaintiff within the protective folds of either of the exceptions upon which he relies.

The contention by plaintiff that his employment was "coupled with an interest" is apparently predicated upon the fact that he was to receive as compensation for the services rendered by him a sum equivalent to 20 per cent of the net profits of the magnesium division of defendants' business, when earned, in addition to a regularly paid salary of $500 per month. Such a contract cannot be held to transfer or assign to plaintiff a present and coexisting interest in the subject of the agency or power, but on the contrary clearly evidences the intention of the parties that plaintiff shall have but a percentage interest in the proceeds derived from the exercise of the power. This is insufficient to couple the agency or power with an interest. (*O'Connell* v. *Superior Court* (1935), 2 Cal.2d 418 [41 P.2d 334, 97 A.L.R. 918] ; *Todd* v. *Superior Court of San Francisco* (1919), 181 Cal. 406 [184 P. 684, 7 A.L.R. 938].)

As to the question whether plaintiff's contract of employment falls within the second named exception, in that it was "entered into upon a consideration," he apparently re-

lies upon a claim that he abandoned other interests in order to serve defendants as being such a consideration as would require the latter to continue his employment for such reasonably additional period as to include all or substantially all of the profits ultimately accruing from the new division. Only one of the cases which he cites can be considered as authority for this proposition, that being *Millsap* v. *National Funding Corp.* (1943), 57 Cal.App.2d 772 [135 P.2d 407], wherein the court said (p. 776): ''. . . Where the prospective employee clearly states to his prospective employer, as in the case before us, that he will not give up his present employment unless the prospective employer will agree to give him permanent employment and the prospective employer expressly agrees to those terms, it seems clear that the prospective employee (to paraphrase the language of section 1605 Civil Code) in giving up his present employment suffers a prejudice as an inducement to the promisor for his promise of permanent employment.'' In the instant case, however, plaintiff has failed to direct our attention to evidence showing any declaration on his part that he would not give up present employment to work for defendants unless the latter would agree to permanently employ him or any acquiescence by the employers to such terms. On the contrary there is evidence to the effect that his then position as an expediter for basic magnesium was terminating because of the completion of its plant and that he would have to look for a job. Under these circumstances no such prejudice has been suffered by plaintiff through his acceptance of employment by defendants as to afford a sufficient consideration to support a contract for the continuance of the employment over any particular period of time. In any event since plaintiff has not alleged such consideration the right of either party to terminate the contract at any time is not subject to modification on this ground. (*Speegle* v. *Board of Fire Underwriters* (1946), 29 Cal.2d 34, 39 [172 P.2d 867, 870].)

The contract of employment between the parties, being terminable at any time at the option of either party, was terminated by defendants effective August 15, 1944. Such being the case the right of plaintiff to the stipulated percentage of net profits of the magnesium division ceased as of that date and he is entitled only to his agreed portion of such profits earned by defendants to the date of termination. The trial court, by its findings and judgment, however, has allowed

plaintiff damage for breach of the express contract in a sum based upon 20 per cent of the earned net profits of defendants' magnesium division for a period beyond August 15, 1944, and to April 30, 1945, the latter being the date when such division ceased business. For the entire period between February 1, 1944, and April 30, 1945, the court found the defendants to have earned about $26,000 through this department of their foundry business and that plaintiff had been damaged to the extent of the value of his 20 per cent interest therein in the sum of $4,800. The mathematical conflict in these figures remains unexplained. No finding appears to have been made as to the net earnings, if any, of this division to and including August 15, 1944.

Following these findings of damage for breach of the express contract of employment the trial judge added the following finding: ''On August 15, 1944, the defendants had become indebted to the plaintiff for services rendered by plaintiff to the defendants at their special instance and request in the sum of $12,000.00, which said sum is the reasonable value of said services so rendered and which said reasonable value the defendants promised and agreed to pay. Nothing has been paid thereon but the sum of $7,200.00; there remains due, owing and unpaid by the defendants to the plaintiff the sum of $4,800.00.'' It is immediately apparent that, while these findings arrive at the same sum, they are entirely conflicting and inconsistent. The latter finding is one for the reasonable value of plaintiff's services as rendered to defendants on an implied contract. While a plaintiff may, in one complaint, join an action upon an express contract with one upon an implied contract he can recover on only one and not both. If there is a valid express contract his recovery must rest upon and be measured by its terms. The compensation agreed upon in the express contract may or may not be the reasonable value of the services to be performed but both parties are bound thereby and neither may, after the establishment of such a contract, recover a different or a larger sum just because such a sum would have been recoverable had the parties not theretofore agreed upon express terms. (*Provident Land Corp.* v. *Bartlett* (1946), 72 Cal.App.2d 672, 685 [165 P.2d 469, 477]; *Fites Co.* v. *Harris Mfg. Co.* (1928), 89 Cal.App. 427, 435 [264 P. 799, 803].)

It is true that the inconsistent and conflicting finding based on *quantum meruit* may be disregarded as surplusage

where there is evidence to support the court's findings on each such count and the opposing party suffers no prejudice thereby (*Niles* v. *Louis H. Rapoport & Sons, Inc.* (1942), 53 Cal.App.2d 644, 652 [128 P.2d 50]; *Empire W. S. I. Dist.* v. *Stratford Irr. Dist.* (1937), 10 Cal.2d 376, 382 [74 P.2d 248]; *Baird* v. *Ocequeda* (1937), 8 Cal.2d 700, 703 [67 P.2d 1055]), but here we find the evidence fails to support the finding as to damages for the breach of the express contract. As a consequence defendants are seriously prejudiced by the *quantum meruit* finding and plaintiff, having relied upon and established his right to compensation, if any, under an express contract, cannot at the same time recover on this separate theory of an implied contract.

The judgment is reversed.

Shinn, Acting P. J., and Wood, J., concurred.