[Civ. No. 3551. Fourth Dist. Apr. 2, 1947.]

PETER GELB, Respondent, v. DAVID M. BENJAMIN et al., Appellants.

Mitchell & Gold and Matt Goldstein for Appellants.

Paul Staniford and G. R. Lovejoy for Respondent.

BARNARD, P. J.—The defendants operated a wholesale beauty supply business, with headquarters in Los Angeles and branches in five other cities. About May 1, 1942, they employed the plaintiff as manager of their Fresno branch under an oral agreement, with a certain salary and commission. In order to carry out its original purpose, this agreement was orally modified by the parties about July 1, 1942, by providing that if the business done by the plaintiff in this branch amounted to $100,000 or more during the first year of his operation thereof the defendants would pay him an additional 5 per cent on the amount of business done. It was stipulated that the business done in this branch for the first year of the plaintiff's employment totaled $132,930.11 and that 5 per cent of that figure amounts to $6,646.50.

The plaintiff remained as manager of this branch until June 5, 1946, when it was closed by the defendants and his services terminated. While the other portions of the plaintiff's compensation were paid in accordance with the agreement, the 5 per cent on the amount of business done during the first year was not paid, and this action was brought to recover that portion. The only defense set up in the answer was that no agreement to pay the extra 5 per cent was made,

and that all monies due to the plaintiff had been paid. The defendants also filed a cross-complaint seeking to recover approximately $350 for various items for which it was alleged the plaintiff was indebted to them. The action was tried before a jury which brought in a verdict in favor of the plaintiff for $6,332.24, being the amount sued for less certain allowances made to the defendants in accordance with their cross-complaint. Judgment was entered accordingly and the defendants have appealed.

The appellants' main contention is that the contract here sued upon was subject to the provisions of the Emergency Price Control Act of 1942, as amended, and that it was, therefore, illegal and unenforceable. The appellants rely on the amendment to the Price Control Act passed by Congress on October 2, 1942, and on the various executive and departmental orders and regulations issued for the purpose of carrying out the provisions of the act, as amended. The orders relied on had the effect, where applicable, of freezing wages and salaries as of certain dates in October, 1942, and of prohibiting increases in salaries or wages after those dates except as provided in the act and in the various regulations, rulings and orders made thereunder, and except where any such increases were approved or permitted by the officers or departments authorized to pass thereon. Among other things, it was provided in these orders that the burden of justifying an increase in a salary rate should be upon the employer seeking to make such increase and that, unless otherwise expressly exempted, any change in a salary rate which was provided for in any agreement in existence on certain dates in October, 1942, which change was to take effect at a future date or on the happening of some future event, was subject to the provisions of the regulations regardless of when the agreement was made. It is argued, therefore, that the agreement here in question, although made some months before these laws and regulations were enacted and issued, comes within their terms and is illegal and unenforceable.

This defense is raised for the first time on appeal and it was in no way pleaded or presented in the trial court. The price control regulations relied on contain a number of exceptions, and no evidence having been received in this connection there is no evidence to indicate in any way that the facts of this case did not come within one or more of these exceptions. From a reading of these regulations it cannot certainly be

said that any approval was necessary here. Aside from a number of other possible exceptions, while the respondent was given a new position in the appellants' organization it does not appear that the compensation agreed upon, including the 5 per cent, was more than had theretofore been paid in the same position and for the same work.

While the appellants contend that the question of illegality may be raised at any time this is true only where the illegality clearly appears. The facts alleged in the complaint in this action do not show on their face that the contract sued upon was unlawful. Under such circumstances, illegality is an affirmative defense that must be specially pleaded. (*Bernstein* v. *Downs,* 112 Cal. 197 [44 P. 557].) In 6 California Jurisprudence, at page 487, it is said: "Especially must a party who would upon this ground repudiate a contract into which he has entered, and which has been fully executed by the other party, make his right to such defense manifest, not only by alleging the facts constituting illegality, but also, if the terms do not disclose illegality, by negativing the existence of any facts or circumstances under which the contract could be held valid."

The contract here in question was valid and lawful when entered into and a large part of it had been performed before the laws and regulations relied on were passed and issued. If it be assumed that these laws and regulations were otherwise applicable, there is nothing in the record to show that the existing facts did not bring this contract within one of the permitted exceptions and, further, there is nothing to show that any permission, if required, was not obtained. There is an entire failure in this regard both as to pleading and proof. The respondent made out at least a prima facie case, and under the circumstances here appearing the burden was upon the appellants to show a violation of the regulations they rely on. (*Basler* v. *Sharp & Fellows Co.,* 73 Cal.App. 2d 480 [166 P.2d 403] ; *Balfour* v. *Heuer,* 77 Cal.App.2d 227 [175 P.2d 55] ; *Thacker* v. *American Foundry, ante,* p. 76 [177 P.2d 322].)

The only other point raised is that the contract, as testified to by the respondent, was indefinite and uncertain. From a portion of the respondent's testimony, in which he testified that an agreement was made to the effect that if he did $100,000 or more in business the first year "I will pay you a 5% bonus," it is argued that it is indefinite and uncertain as to what figures were intended to be used as the basis

upon which the 5 per cent was to be calculated. It is then argued that the only reasonable explanation is that the parties intended that the respondent's other salary was to be taken as a basis for calculation, and that he was to receive an additional 5 per cent of that other compensation. Not only was the case tried on the other theory, but other portions of the respondent's testimony clearly show that the 5 per cent was to be calculated upon the amount of sales made during the year in question. He testified that the agreement, in the event the business amounted to $100,000 or more during the year, was that he would receive 5 per cent on all of the sales made during the year. When all of the testimony is considered no uncertainty or indefiniteness appears.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.