[Civ. No. 3553. Fourth Dist. Apr. 29, 1947.]

GEORGE P. PAPPAS et al., Respondents, v. NICK DELIS, Appellant.

William E. Ferriter, James C. Purcell and William Petros for Appellant.

Aynesworth & Hayhurst and John J. Gallagher for Respondents.

BARNARD, P. J.—Under a written contract dated September 1, 1945, the respondents sold a 40-acre crop of growing onions to the appellant. The purchase price was $16,000, of which only $1,000 was paid. In accordance with the understanding of the parties the appellant harvested the crop at his own expense some time during the month of October. This action was brought to recover the balance of the purchase price. Relying on the defense that the purchase price of this crop was contrary to OPA regulations, the appellant

introduced no evidence other than to bring out, upon cross-examination of the respondents' witnesses, that at the time of the sale the parties did not know how many onions there would be in this field and that the OPA rules and regulations were not discussed by them. The court found in all respects in favor of the respondents, giving judgment for the full amount prayed for, and this appeal followed.

The appellant's sole contention is that this transaction violated the provisions of the Emergency Price Control Act of 1942 (Pub. Law 421, 77th Cong., 2d Sess., 56 Stats. 23) as amended, and the provisions of Revised Maximum Price Regulation 271 issued by the Office of Price Administration pursuant to the authority given thereby, and that it follows that the contract entered into between these parties was illegal and void.

The question presented depends upon the applicability, meaning and construction of Revised Maximum Price Regulation 271, relating to the sale of potatoes and onions. In a similar case the United States District Court, Southern District, Northern Division (*George J. Barnett* v. *Atlantic Commission Company, Inc.*, 233 Civil), held that these OPA regulations were not intended to be applicable to a sale of growing crops in the field. In that case, the court pointed out that these regulations evidenced no intention to cover a growing crop as such, where the harvesting was to be done by the purchaser, where additional labor was called for, and where the factor of labor constituted an unknown quantity but one without which a price ought not to be fixed; and further pointed out that if the OPA intended these regulations to cover such a situation they could and should have directly so provided.

A careful reading of the regulations here in question (RMPR 271) strongly confirms the holding in the case just cited that they were not intended to cover the sale of growing crops in the field where the expense of harvesting is to be paid by the buyer and where many other factors may be involved, including further expense of cultivation and various matters which may interfere with and affect the production of a crop.

The provisions of RMPR 271 may be briefly reviewed insofar as material here. Article I, section 1, covering applicability, provides that "This regulation establishes maximum prices for all sales of white flesh potatoes and dry onions."

The expression used, "dry onions," would seem to be intended to mean onions after they are harvested and have become a commodity, and not while they are growing or still in the ground. Section 7 of article I contains a provision forbidding the sale of onions at higher than maximum prices established by this regulation, and will be later referred to. Section 8 contains certain definitions. No. (3) defines a "country shipper" as meaning any person, including a grower, who makes sales from a farm or other country shipping point to any other person. No. (10) defines "country shipping point" as meaning the farm or other place near the producing area from which onions are sold or delivered or prepared for sale, and further provides that "prepared" includes, among other things, "harvesting." The only reasonable construction of these provisions is that while a country shipper includes a grower, and while a country shipping point includes a farm, the person making the sales who is covered by the regulations is the person who harvests the crop. These provisions rather clearly show they were intended to cover harvested potatoes and onions and not growing crops. Article II is entitled "Maximum Prices For Table Stock Potatoes and Onions." This also carries with it the idea of harvested potatoes and onions rather than growing crops. This idea is confirmed by the provisions contained in article II. Section 9(a) thereof provides "If you are a country shipper your maximum prices f. o. b. country shipping point are established in Article V, section 24 and section 25." Article V, section 24, relating to onions, has certain maximum prices for certain months and certain areas, all relating to dry onions, being f. o. b. prices in sacks or in bags. It is significant that a differential in price is here provided where certain things are furnished by the buyer, but none covering the expense of harvesting and completing cultivation when done by the buyer. Article II, section 9(h) (1) further provides that every country shipper making a sale to any person shall either furnish an invoice or shall attach a label to each sack of onions on which shall be stated the state in which the onions were grown and the year and month of the sale. This is inconsistent with the sale of a growing crop in the field. Article II, section 9, further gives several "examples." Example 2 is that a country shipper in Modoc County, California, who wishes to sell unharvested potatoes to be harvested in September, 1943,

should turn to article V, section 24, table 3, to find the maximum price allowed and then states: "You may not sell unharvested potatoes at a per-acre price because you must know the yield before you can figure the price per cwt." This last provision is the one mainly relied upon by the appellant, who contends that it is also applicable to onions and that it is a part of the regulation itself, having the effect of law. Assuming that this last provision would also apply to onions it may not be taken out of its context. It is perfectly clear from the context that this provides that the grower, who is to become a country shipper within the meaning of the regulation, may not sell unharvested potatoes which he intends himself to harvest, at a price above the maximum set. This is clearly intended to prevent a violation of the act by selling the potatoes before they are harvested and then harvesting and delivering them himself. However, there is nothing in this provision which changes the meaning and effect of the entire regulations contained in RMPR 271, which are clearly confined to dry onions as a commodity after they are harvested and not to growing crops in the field. This view is confirmed by another set of regulations of the Office of Price Administration contained in MPR 426, which is the general regulation covering the sale of fresh fruit and vegetables. This regulation contains several provisions to the effect that no person may purchase acreage of certain listed commodities at a price which would result in a price higher than the maximum price allowed unless that person operates a packing and shipping plant for that commodity. Not only would it appear that a growing crop of onions was intentionally omitted from these provisions, but if it was intended to be included there is nothing here to show that the appellant, whose business was that of a produce dealer, did not regularly operate a packing and shipping plant for onions.

In reply to the proposition that RMPR 271 was not intended to apply to growing crops the appellant contends first that example 2 given under article II, section 9, as above set forth, shows that it was so intended. This contention has already been sufficiently covered. ▮ The appellant then contends that there is no evidence here to support the finding that the sale here made was one of a growing crop. Not only does it appear that the parties intended that the appellant should harvest this crop, but it appears that he did harvest it more than a month after the sale took place. The only rea-

sonable interpretation of the written contract is that the appellant, as buyer, assumed all hazards incidental to the continued growing of this crop and assumed any possible danger from pests or any other matters which might have affected the size or condition of the crop which would eventually be harvested. Moreover, the complaint alleged that on September 1, 1945, these parties ''entered into an agreement in writing, wherein and whereby plaintiffs sold to defendants, and defendants purchased of and from plaintiffs, a 40-acre field of growing onions—.'' Instead of denying this allegation the appellant, in his answer thereto, affirmatively alleged that on this date these parties ''did enter into an agreement, wherein and whereby plaintiff sold to the defendant Nick Delis, and the defendant purchased of and from the said plaintiffs, a 40-acre field of growing onions.'' This fact being admitted no evidence was necessary.

If it could be assumed that the provisions of RMPR 271 could be applicable to the sale of growing crops it does not here appear that the transaction here in question was illegal on its face and, therefore, void. The appellant contends that the entire contract was illegal and void from its inception, as a matter of law, and without the necessity of introducing any evidence because section 7 of article I contains a prohibition against sales above the maximum prices fixed in this regulation. Section 7 provides that ''On and after May 25, 1943, regardless of any contract or other obligation, no person shall sell or deliver and no person, in the course of trade or business, shall buy or receive potatoes and onions at prices higher than the maximum prices established by this regulation, and no person shall agree, offer, solicit, or attempt to do any of the foregoing.'' The provision that regardless of any contract no person shall sell or deliver and no person shall buy and receive onions at prices higher than the maximum prices established would seem to be intended to declare that regardless of contract any prices agreed upon which were above the maximum prices allowed would be illegal, rather than to declare that the contract itself was illegal and void. The purposes of the act contemplated the making and carrying out of sales of such commodities, and the prohibition referred to seems to have been directed at any excess over the maximum prices allowed while still recognizing the contract, and not to the end of creating chaos by preventing

the raising and selling of products through penalizing an ignorant farmer in dealing with a produce dealer, by depriving him of all returns from his crops, in the event of an accidental or incidental violation of the strict provisions of numerous ambiguous and intricate regulations. Moreover, sections 20 and 21 of article III of RMPR 271 provide for modification of the prices fixed on proper application therefor. It cannot be said that a particular contract is illegal and void upon its face when it does not appear whether or not a proper modification has been applied for and granted. Further, it does not appear that the appellant did not regularly operate a packing house for this commodity, which may have called for the application of another exception to these regulations.

Not only does it not appear upon the face of this transaction that it was illegal and void, but there is no evidence in the record from which the court could have found that the contract was illegal or that it was in violation of these regulations. The appellant harvested and removed these onions and is the only one who knew or could have produced evidence as to the quantity of onions which was eventually produced and taken by the appellant by virtue of this sale. He failed to produce any evidence as to this fact, and all presumptions are in favor of the judgment and not against it. For anything that here appears the quantity of onions produced and taken by the appellant may have been such that the contract price agreed upon was at a rate far below the maximum prices provided for in RMPR 271, assuming that the provisions of that regulation were applicable and material here.

The plain situation is that the appellant has failed to meet the prima facie case made by the respondents and has failed to sustain the burden of proof resting upon him. (*Basler* v. *Sharp & Fellows Co.,* 73 Cal.App.2d 480 [166 P.2d 403]; *Balfour* v. *Heuer,* 77 Cal.App.2d 227 [175 P.2d 55]; *Thacker* v. *American Foundry,* 78 Cal.App.2d 76 [177 P.2d 322]; *Gelb* v. *Benjamin,* 78 Cal.App.2d 881 [178 P.2d 476].)

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.

A petition for a rehearing was denied May 27, 1947, and appellant's petition for a hearing by the Supreme Court was denied June 26, 1947.