[Civ. No. 15300. Second Dist., Div. One. Nov. 8, 1946.]

ELIZABETH E. BRYANT, Respondent, v. KANAU MARSTELLE, Appellant.

John Van Aalst for Appellant.

Daniel A. Knapp for Respondent.

WHITE, J.—By her amended complaint, containing two causes of action and filed herein, plaintiff alleged in her first cause of action that she was the owner of certain described improved real property in the city of Los Angeles; that on or about February 10, 1940, she "permitted the defendant to occupy . . . an apartment located over a garage" on the real property here in question; "said premises to be held and possessed by defendant for a period of two years without rental"; and that as a condition precedent to said tenancy "defendant voluntarily agreed to install plumbing, etc., in said premises and repair and remodel the roof and walls thereof." It is then alleged that prior to the 20th day of November, 1944, plaintiff was served with a notice from the Planning Commission of the city of Los Angeles requiring her to conform to the provisions of section 13.04 of the Los Angeles Municipal Code by causing the upper floor of said garage, occupied by defendant, to be forthwith vacated.

That on November 20, 1944, plaintiff served on defendant a written notice to vacate said premises on December 21, 1944. Said notice to vacate specified as the ground therefor, that the further occupancy of said premises by defendant was in violation of the foregoing Los Angeles Municipal Code provision. That defendant failed and refused to remove from said premises and that at the time this action was instituted remained in possession and occupancy thereof.

By her second cause of action, plaintiff sought to quiet title in herself to the property in question.

Defendant filed an answer in which she admitted that plaintiff permitted her to occupy the premises above referred to but denied that the terms of such occupancy were as set forth in plaintiff's amended complaint, and generally denied the other allegations therein contained. As a separate defense, defendant alleged that, on February 10, 1940, she was a medical student, and "well acquainted with the profession and science of nursing the sick"; that on and before the last mentioned date the parties hereto were acquainted with each other, and that plaintiff, "desiring from time to time to make use of the professional qualities of the defendant, and the plaintiff from time to time accommodating ailing, sick and elderly people in her own home as patients, and wishing to avail herself of the valued services of the defendant," offered defendant the living facilities aforesaid. That defendant "at the special instance and request of the said plaintiff, did agree that the said defendant would, at her own cost and expense, refurnish, recondition, and rebuild those certain premises mentioned herein, and if the said defendant did so improve the said premises so as to make them livable and inhabitable then the said defendant would have the use of said premises as a place for study and living, for her own use and purpose, to do with, to use and occupy, and to hold possession thereof as long as the defendant saw fit to do so." It is then alleged that pursuant to the aforesaid oral agreement, defendant spent the sum of approximately $1,500 "in rebuilding, redecorating, reconditioning and in installing plumbing and sanitation devices and appliances. . . ."

Defendant prayed that the court decree that she "has a present and existing right to retain and occupy the said premises as a place of abode and for study as long as the defendant desires to do so"; and that the court find that she did spend the aforesaid sum of $1,500 upon the portion of the premises occupied by her; that in event the court determined that her occupancy of that portion of the premises in the rear of the property would be a violation of the above mentioned municipal ordinance, that the court find the reasonable value of the use of said portion of the property from February 10, 1940, to the date of the trial, and that defendant have judgment for the difference between the sum so determined and the sum of $1,500 expended by defendant, as aforesaid.

Following trial before the court, sitting without a jury, and the waiver of findings, the court entered judgment for the plaintiff, quieting title in her to the property in its entirety, and that "defendant be and hereby is required to forthwith remove from said premises, and it is further ordered that a Writ of Assistance issue out of the above named Court to enforce the same.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiff have and recover from defendant the sum of one hundred ninety dollars ($190.00) as damages arising from her holding over that portion of said premises set forth in the notice to vacate, dated November 20th, 1944, and accruing subsequent thereto, with interest thereon at the rate of seven per cent (7%) per annum until paid, together with plaintiff's costs and disbursements incurred in this action amounting to the sum of $20.25."

Defendant does not dispute plaintiff's title to the property and appeals only from that portion of the judgment as set out above in quotation marks.

As grounds for reversal, appellant urges:

"I. That the evidence is insufficient to show an agreement between appellant and respondent respecting the term of occupancy by the appellant; that the tenancy was to terminate upon completion of appellant's medical course in Los Angeles.

"II. That this case does not involve a lease between the parties, nor a tenancy at will or at sufferance, but a license, coupled with a consideration.

"III. That Section 13.04, Los Angeles Municipal Code, has no application to appellant's case herein at issue.

"IV. Respondent is estopped from collecting rent for failure to register housing accommodations with O. P. A."

Where, as here, findings have been waived, it is axiomatic that all reasonable inferences will be drawn from the evidence, and that the most favorable construction will be drawn therefrom to support the judgment (*Benjamin Moore & Co.* v. *O'Grady,* 9 Cal.App.2d 695, 699 [50 P.2d 847]).

Bearing this rule in mind, with reference to the nature of the agreement of the parties hereto, we find in the record evidence given by the plaintiff in part as follows:

"A. When I took her over to the property and she saw the lay of rooms and she saw the condition of the garage, and when we got back to the house where I was living, she wanted

to know if I would let her fix the garage up so that she could use it, the next two years, at least, for she was preparing herself for a course of study in chemistry at Berkeley and that she had to make her credits, she wanted to have a quiet place to study in. And I asked her, I asked her how much she thought it would cost and she said not too much if I would let her use the second-hand flooring that Mr. Hunt, who was an architect, had left there when I bought it, that she didn't think it would run $350. But I thought it would run more than that. But she said no, that—— Marstelle said no, that she could get a second-hand bath tub in that and kitchen fixtures, and the stool; and her greatest expense would be to connect the sewerage about 35 feet from the building; that the light and the gas fixtures and the water run to the first floor and she would only have to take them up from there." Plaintiff further testified that the defendant paid her no rent, performed no services whatever for her, and that plaintiff paid the utility bills such as gas, water and light.

With further reference to the term defendant was to occupy the quarters in question, plaintiff testified: "She (defendant) said it would take her at least two years, maybe; she said it might be less but she said she didn't think it would be."

Although the testimony given by the defendant was in direct conflict with much of plaintiff's testimony and was that plaintiff told her that she could have the quarters in question "as long as I wanted," nevertheless, plaintiff's testimony furnished a basis for the court to have found that the agreement between the parties was that defendant was to occupy the premises for the term of her medical course prior to her entry into the College of Medicine at Berkeley, but not to exceed two years, provided that at her own expense she installed certain facilities and reconditioned said premises. In the absence of findings it will be presumed that the court did so find, and that the judgment would be supported by a finding that plaintiff did not orally agree with defendant that the latter "would keep the garage until I had finished my medical and then I would return to her without removing any of the fixtures . . ., that I could have it as long as I wanted," as testified to by defendant.

Defendant contends that the relationship between her and the plaintiff was not one of landlord and tenant but of

licensor and licensee. It being undenied that the agreement was not made in consideration of rent, manifestly it was not a lease (*Dean* v. *Brower*, 119 Cal.App. 412, 415 [6 P.2d 580]).

We may therefore accede to appellant's contention that she was in possession under a license, which, in respect to real estate, is defined in *Emerson* v. *Bergin*, 76 Cal. 197, 201 [18 P. 264], as "An authority to do a particular act, or series of acts, on another's land without possessing any estate therein." And the same case is authority for the statement that "a mere license may be revoked at any time at the pleasure of the licensor."

However, appellant urges, and correctly so, that this rule is not without its modifications and exceptions. Where the licensee has expended in the execution of the license, money or its equivalent in labor, in reliance upon the license, his rights under the license "will continue for so long a time as the nature of it calls for" (*Stoner* v. *Zucker*, 148 Cal. 516, 520 [83 P. 808, 113 Am.St.Rep. 301, 7 Ann.Cas. 704]). But the same case, pages 519, 520, furnishes authority for the statement that such exception to the general rule is applicable only when a right under a license is not specifically restricted, in which event the right "is commensurate with the thing of which the license is an accessory," and will continue "for so long a time as the nature of it calls for." In the instant case there was substantial evidence to support a finding that "the nature of the license" was for appellant to use the premises as a habitation while she was "preparing for a Berkeley medical course" and was "specifically restricted" to a term, fixed, according to respondent's testimony, by appellant herself, as not more than two years. Hence, assuming that appellant entered upon the premises as a licensee, respondent had a right to revoke the license, under the general rule, at any time after the expiration of the 2-year period.

Appellant next contends that section 13.04 of the Los Angeles Municipal Code, referred to in respondent's notice to vacate as the basis of such notice, has no application to the case at bar. It is appellant's contention that under the city ordinance, respondent's structures having been in existence at the time the applicable restrictive provisions of the ordinance were adopted, came within the purview of certain provisions of such zoning ordinance which exempted therefrom "a nonconforming building, structure or improvement

. . . which lawfully existed on any lot or premises at the time the first zoning regulation became effective with which such building, structure, or improvement did not comply in every respect.''

Appellant asserts that respondent's notice to vacate was based upon a mistake of law, and, that respondent could have successfully resisted any attempt to prosecute her under the penal provisions of the ordinance which made a violation of its terms a misdemeanor.

In giving notice to respondent that in permitting the upper floor of the garage to be occupied she was guilty of a misdemeanor, and requiring her to within 15 days cause said premises to be vacated, the Los Angeles Municipal Planning Commission contended that two families were occupying the premises in a zone restricted to single family residence. True, respondent might, after long and possibly expensive litigation, obtain a judicial adjudication nullifying the demand made upon her by the municipal authorities. But we do not view the rights of a licensee under the facts herein, as imposing upon the licensor any such obligation. Furthermore, as heretofore pointed out, the time of appellant's occupancy under the license was ''specifically restricted'' to not more than two years, and was permitted to continue for nearly five years. Therefore, respondent was not required, in order to terminate appellant's occupancy of the premises, to rely upon the demand of the municipal authorities to cause the premises occupied by appellant to be vacated. There was substantial evidence that the limited term of the license had long since expired when the notice to vacate was served.

Finally, appellant urges that ''respondent, before claiming rents due her, cannot determine monthly rental of premises without conforming to O. P. A. regulations.'' This contention, urged for the first time on appeal, is evidently predicated on that portion of the judgment awarding respondent ''the sum of one hundred ninety ($190.00) dollars as damages arising from her holding over that portion of said premises set forth in notice to vacate, dated November 20, 1944, and accruing subsequent thereto.'' Appellant's claim in this regard is without merit. It is conceded that no rent whatever was asked for or collected from appellant during the nearly five years of occupancy by her of the premises up to the date of service upon her of the notice to vacate. Upon the trial, the only evidence relating to the

rent went to the question of damages, and the court permitted testimony as to rental value of the premises from the date which appellant was required under the notice to surrender the premises, viz., December 21, 1944, which, it was testified, was $20 per month, unfurnished. This testimony went solely to the measure of damages, and, as recited in the judgment, the award based upon such testimony was particularly designated "as damages." Manifestly, the rent control regulations or rules promulgated by the Rent Control Division of the O. P. A. have no application thereto.

We find no error in the record, and the judgment appealed from is affirmed.

York, P. J., and Doran, J., concurred.