[Civ. No. 20525.   Second Dist., Div. Two.   Jan. 26, 1955.]

HERMAN JAPPE, Appellant, v. CHARLES F. MANDT, Respondent.

Lionel Richman for Appellant.

Majorell & Majorell for Respondent.

FOX, J.—This appeal arises out of an action for damages for fraud in which plaintiff alleged that he had been induced by misrepresentations of defendant to enter into a contract to purchase a rubbish route.

These alleged misrepresentations fall into two classes. The first class is affirmative in character. Generally speaking, they assert defendant represented that the business consisted of at least 1,200 customers and that the business was very profitable and the route valuable. In rendering its oral decision the court "found" these allegations were not true. Plaintiff does not, therefore, seek a reversal of the judgment against him on account of these charges.

The second class of alleged misrepresentations is of a negative nature, a failure to reveal material facts which defendant had a duty to disclose. In this respect plaintiff's complaint alleges defendant knew that the city of Hawthorne, in which the route was located, contemplated letting a contract for the disposal of rubbish but failed to disclose this fact to him. Plaintiff's appeal relates solely to this phase of the case.

Prior to June, 1952, defendant Mandt owned and operated a rubbish collection service. The business consisted of customer accounts, trucks, and other necessary equipment. The territory covered was Imperial Village, the entire city of Hawthorne, and a few accounts in Los Angeles city and county territory. In April, 1952, plaintiff Jappe met Mandt at a welding shop in Hawthorne operated by Ted Burwick and Ray Donnelly. The latter were discussing with Mandt the possible purchase of a part of his rubbish disposal business. Jappe indicated his interest in also purchasing a part of Mandt's business. Burwick and Donnelly purchased the Imperial Village route on May 1, 1952, since it was the less expensive of the two routes and thus within their financial capacity. Thereafter, following a conversation with Burwick, Jappe contacted Mandt with respect to the purchase of the Hawthorne segment of his business. As a result, a contract for the purchase and sale of this portion of Mandt's business was executed by the parties on June 10, 1952. In the meantime, Jappe had examined the customer files, counted the cards and audited the accounts. He had full opportunity to make whatever investigation he thought was necessary.

By reason of certain conversations, plaintiff contends that "prior to June 10, 1952," defendant "had knowledge that the city of Hawthorne contemplated letting a contract to pick

up combustible rubbish.'' In fact, he asserts that the trial court so found, and that it erroneously concluded that defendant's ''knowledge did not constitute facts which he was duty bound to disclose to'' plaintiff. The record, however, does not sustain his position.

■ Findings of fact and conclusions of law were waived. It therefore follows that every intendment is in favor of the judgment. (*Bryant* v.·*Marstelle*, 76 Cal.App.2d 740, 744 [173 P.2d 846].) In such circumstances ''the reviewing court will assume that the trial court found every fact essential to support the judgment, and when a transcript of the evidence is before the reviewing court it will not weigh the evidence to determine what is true and what is not, but it will search the record for the purpose only of determining whether there is substantial evidence supporting the judgment and will resolve all doubts in favor of the judgment.'' (*Baker* v. *Baker*, 98 Cal.App.2d 424, 426 [220 P.2d 576]; *Price* v. *Price*, 114 Cal.App.2d 176, 179 [249 P.2d 841]; *Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689].) Thus searching the record pursuant to this rule we find that the defendant testified that prior to the time he sold the business to Jappe he did not know the city of Hawthorne contemplated letting a contract for the disposal of rubbish and had solicited bids therefor.[1] He was later asked: ''When did you first learn that the City of Hawthorne actually as a matter of fact contemplated the letting of any contract in the City of Hawthorne?'' He replied: ''I believe that was about the middle part of July of 1952.'' He was also asked: ''Now, prior to June 10, 1952, did you have a conversation with anyone with regard to the city awarding a contract for the collecting of rubbish to Mr. Kazarian or anyone else?'' His answer was ''No, I did not.'' In summarizing and evaluating the evidence at the conclusion of the trial the judge observed that ''As far as Mr. Mandt's knowledge is concerned of the facts, he had none until sometime at the earliest in the middle

---

[1]Following is an excerpt from defendant's testimony on this subject:

''Did you know that the City of Hawthorne contemplated letting a contract for the disposal of rubbish within the City of Hawthorne and had solicited bids for said contract?

''A. Not to my knowledge. As far as contemplating a contract, it is a matter of public record.

''Q. Did you know? A. Did ·I know they were contemplating a contract?

''Q. For the disposal of rubbish within the city, and had solicited bids for such contract. A. Before the sale of the business?

''Q. Yes. A. No.''

of July, about the 18th . . ."[2] ■ The testimony to which we have referred justifies the trial judge's appraisal of the evidence and supports the implied finding that Mandt did not have knowledge prior to June 10, 1952, that the city contemplated letting a contract to pick up combustible rubbish. Such an implied finding is sufficient to sustain the judgment in defendant's favor.

The conversations with respect to the possibility of the city's going into the field of collecting combustible rubbish and letting a contract therefor indicate that the idea was in a nebulous state. They also produced conflicting reports and rumors. In analyzing this phase of the evidence the trial judge remarked that defendant was aware that a contract to pick up combustible rubbish "was possibly in the wind." This strikes us as being a fair appraisal of the situation, particularly in view of the court's clear indication that he could not give full credence to the testimony of one of plaintiff's witnesses on this subject. No action, either formal or informal, had been taken by the city council. It does not appear that a majority of the city council had committed themselves or even expressed an opinion in favor of such a venture on the part of the city. The idea was still in the conversation and rumor stage. ■ The parties were dealing at arm's length. There was no fiduciary or other relation of trust or confidence between them. Plaintiff had full opportunity to make a complete investigation of all facets of the business he was seeking to buy. Under such circumstances defendant was not legally bound to tell the prospective buyer of any rumors or reports that were "in the wind," that the city might "possibly" enter this field. (*Carter* v. *Seaboard Fin. Co.*, 33 Cal.2d 564, 569 [203 P.2d 758]; *Amend* v. *Hurley*, 293 N.Y. 587 [59 N.E.2d 416, 419]; *Grenlac Holding Corp.* v. *Kahn*, 106 N.Y.S.2d 83, 85.)

This case is clearly distinguishable from *Dyke* v. *Zaiser*, 80 Cal.App.2d 639 [182 P.2d 344], for in that case the defendant was a city councilman who, by virtue of his position, knew of official action that had already been decided upon which would be definitely executed within 24 hours and which would and did have the effect of greatly depreciating the value of the subject matter of the transaction.

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.

[2]Shortly after this date a contract, effective in the early part of August, was entered into by the city and Mr. Kazarian for the collection of such rubbish.