[Civ. No. 20663.   Second Dist., Div. Two.   Mar. 10, 1955.]

KORRY OF CALIFORNIA (a Corporation), Respondent, v.
HAROLD LEFKOWITZ, Appellant.

Arkin & Weissman for Appellant.

Edward Mosk for Respondent.

FOX, J.—This is an action by plaintiff against one of its salesmen to recover "a balance on an open, mutual and current account." Defendant appeals from an adverse judgment.

Plaintiff, a Los Angeles concern, manufactures and sells men's ties. In early February, 1952, defendant was hired by plaintiff as a salesman. His territory was Texas and portions of Kansas and Oklahoma. Defendant remained in the employ of plaintiff until August, 1953. Because of the expense of establishing himself in distant territory and his lack of funds, defendant stated "he would like an advance against his commission." Such procedure was customary in this business. A weekly advance of $125 was agreed upon. These weekly advances were charged against defendant's earned commissions. Each month a statement of the invoices credited to the account of the defendant showing the commission due him and the advances paid him, together with the debit or credit balance in favor of the parties, was mailed by plaintiff to him. Defendant admitted receipt of these monthly statements. He made no complaint that they did not truly reflect the state of the account between the parties.

As time went on defendant fell behind in his sales so that his advances always exceeded his commission. Plaintiff thereupon informed defendant that "the balance due Korry was just getting too high." In discussing the account in April or May, 1953, with a vice president of plaintiff, defendant stated "he would wipe out the debt to" plaintiff.

At the time the defendant's services were terminated, the balance by which his advances exceeded the commissions earned by him as reflected by the records kept by plaintiff was $3,206.13. The court awarded plaintiff judgment in this amount, notwithstanding defendant's testimony that he was to have a guaranteed advance.

In his notice to the clerk to prepare the record on appeal, the defendant, in addition to the reporter's transcript, requested a clerk's transcript "to include the complaint, answer of the defendant, and judgment of the court, and also to in-

clude all exhibits admitted in evidence.'' As a consequence there are no findings of fact and conclusions of law in the record. Furthermore, the Salesman's Commission Work Sheets, plaintiff's Exhibit 1, which reflected the character and state of the account between the parties, is not among the exhibits. It appears to have been released at the conclusion of the trial, pursuant to stipulation, to counsel for plaintiff, who signed for it on that date.

In the absence of findings of fact and conclusions of law every intendment is in favor of the judgment. (*Bryant* v. *Marstelle,* 76 Cal.App.2d 740, 744 [173 P.2d 846].) In such circumstances ''the reviewing court will assume that the trial court found every fact essential to support the judgment, and when a transcript of the evidence is before the reviewing court it will not weigh the evidence to determine what is true and what is not, but it will search the record for the purpose only of determining whether there is substantial evidence supporting the judgment and will resolve all doubts in favor of the judgment.'' (*Baker* v. *Baker,* 98 Cal.App.2d 424, 426 [220 P.2d 576]; *Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689]; *Jappe* v. *Mandt,* 130 Cal. App.2d 426, 428 [278 P.2d 940].)

Thus searching the record pursuant to this rule we find testimony on behalf of plaintiff indicating that defendant was hired on a commission basis; that he was to have a weekly advance which would be charged against his commissions; that an account was set up on plaintiff's books, kept in the due course of business, correctly reflecting the commissions earned by defendant and the charges against him, which account disclosed that when defendant's commissions for a particular month, as, for example, March, September and November of 1952, exceeded the amount drawn by him, the excess was used to reduce the credit balance at that time; that a copy of these monthly accounting records (which made up the exhibit not before us) was sent to defendant regularly; that he admittedly received the same; and that he did not during the course of his employment make objection to any of the items thereon. There were also conversations between Mr. Kopelow, vice president of plaintiff, and defendant in the spring and summer of 1953, when defendant's advances substantially exceeded his earned commissions, indicating that he was indebted to the plaintiff in the amount of such unfavorable balances and indicating further that defendant so understood the situation, and intended and expected to pay

off such balance.* Bearing in mind it was for the trial judge to evaluate the witnesses and the weight to be given to their testimony, and to determine the inferences to be drawn from the acts and conduct of the parties during the year and a half of their business dealings, it cannot be said, as a matter of law, that there is insufficient evidentiary support of the judgment, for the trial judge could reasonably infer from the items we have enumerated that there was a promise to pay any balance of advances over earned commissions. (See *Theriault* v. *E. L. King & Co.,* 282 Mass. 109, 112 [184 N.E. 386].)

It is implicit, of course, in the judgment for plaintiff that the trial judge did not give credence to defendant's testimony that he was to receive a guaranteed advance.

█ Defendant, in his reply brief, argues the significance of certain testimony, viz., the fact that monthly statements showing the detailed condition of the account between the parties were mailed to defendant and that defendant promised that he would "wipe out the debt to" plaintiff. The inferences to be drawn from this testimony were for the determination of the trial court. A reviewing court is not at liberty to reevaluate such evidence or to draw inferences therefrom contrary to those reasonably drawn by the trial judge.

---

*Mr. Kopelow testified as follows to a conversation he had with defendant on this subject in April or May of 1953:

"Q. BY MR. MOSK: Was there any discussion . . . that you had with Mr. Lefkowitz 'in which you discussed specifically the matter of the balance showing on these accounts as due Korry of California from Mr. Lefkowitz? A. Oh, yes.

"Q. Will you tell us who was present at the time of this conversation? This also took place at Korry's? A. Yes.

"Q. What was said by Mr. Lefkowitz and what was said by you or anyone else present? . . . A. He said we don't have to worry as far as he was concerned, that he was certain that his business in the fall— it was running into the spring and summer when business was down but by fall that he would do a considerably greater amount and not only *he would wipe out the debt to us* but he would earn more than enough to take care of his sales and commissions and taxes." (Italics added.)

On cross-examination defendant gave the following testimony on this subject:

"Q. Did you have conversations with Mr. Philip Kopelow in the late summer of 1953 at the office of Korry of California? A. We had conversations summer and winter; I don't remember.

"Q. Was there an occasion when you had a conversation with him with regard to the continuation of the advance of certain sums of money that you had been receiving? A. Yes, sir.

"Q. And is it not true that Mr. Kopelow indicated that Korry could no longer continue advancing these sums to you? A. Yes, sir.

"Q. And did he not say on that occasion that the reason he could not was that *the balance due to Korry was just getting* too high for them to keep it going that way? (Italics added.) A. Yes, sir."

Defendant cites a number of cases from other jurisdictions to the effect that where advances made to a salesman are charged against his commissions, he is not required to repay any excess of advances over commissions unless it has been expressly or impliedly agreed that he do so. These cases, of course, are not helpful to defendant since there is ample evidence in the instant case to support an implied finding that he agreed to repay any balance.

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied March 24, 1955.