Estate of SUZANNE C. BUZZA, Deceased. POLLY BUZZA LAWTON, Appellant, v. GEORGE E. BUZZA, JR., Respondent.

John C. Goff and Neil G. McCarroll for Appellant.

John L. Mace for Respondent.

McMURRAY, J. pro tem.*—This is an appeal from decree determining heirship under which respondent George E. Buzza, Jr., prevailed over the contentions of his sister appellant Polly Buzza Lawton.

Decedent Suzanne C. Buzza was the wife of George E. Buzza, Sr. The appellant and respondent are coadministrators of her estate and are the only children of such marriage. George E. Buzza, Sr., died April 12, 1957, and Suzanne C. Buzza died December 26, 1959. On June 8, 1935, George, Senior, and Suzanne executed an agreement for an *inter vivos* trust. By its terms the income therefrom went to Suzanne for her life, and in the event that she predeceased George, Senior, the income went to George for his life, and upon the death of both Suzanne and George, Senior, the trust terminated and the corpus vested in appellant Polly Buzza Lawton. The terms of the original trust relating to its termination provided as follows: "Upon the death of said George E. Buzza and Suzanne C. Buzza, leaving her daughter, Polly Suzanne Buzza, them surviving, the trustee shall convey, transfer and deliver to said Polly Suzanne Buzza the corpus and accrued income then remaining of said trust estate freed from all of the provisions hereof."

On October 15, 1943, this termination provision was amended to provide that the income would go to Suzanne during her life and, upon her death leaving George, Senior, surviving, the income was to go to Polly during her lifetime. It was further provided that upon the death of George, the trust was to terminate and the corpus was to be distributed to Polly. It also set forth that upon the death of George, Senior, leaving Suzanne surviving him, the trust was to terminate and the corpus thereof was to be distributed to Suzanne. The language of this 1943 amendment is as follows: ". . . income to the said Suzanne C. Buzza during her life and in the event of her death, leaving her surviving the said George E. Buzza, the said remaining income shall be paid to Polly B. Lawton, during her life.

"Upon the death of said George E. Buzza leaving his former wife, Suzanne C. Buzza him surviving the trustee shall convey, transfer and deliver to the said Suzanne C. Buzza the corpus and accrued income then remaining of the said trust estate freed from the provisions hereof. If the said Suzanne C. Buzza shall predecease the said George E. Buzza and the

*Assigned by Chairman of Judicial Council.

said George E. Buzza shall leave him surviving his daughter, Polly Suzanne Lawton, formerly Polly Suzanne Buzza, then upon the death of the said George E. Buzza, the Trustee shall convey, transfer and deliver to the said Polly Suzanne Lawton the corpus and accrued income then remaining of the said trust estate freed from all of the provisions hereof.''

A reading of the two termination provisions discloses that the original trust made no provision for the contingency of George, Senior's predeceasing Suzanne, and that the amendment covered this contingency. However, under the original trust, it was provided that the corpus ultimately went to Polly upon the death of both George, Senior, and Suzanne, whereas the amendment provided that if Suzanne survived George, Senior, the corpus would go to Suzanne.

In 1950 before George, Senior's death, Suzanne executed a holographic will and some time thereafter George, Senior, died. That will provided, in part, that George E. Buzza, Jr., should receive an apartment house in Beverly Hills and that Polly would receive a beach house in Hermosa Beach and that ''[i]ncome from trust goes to Polly at my demise—$100 to $125 per month.''

The trial court found in favor of respondent George E. Buzza, Jr., and adjudged that appellant take nothing under the clause in the will which is hereinabove set forth. It is respondent's position, and apparently was the conclusion of the trial judge, that upon George, Senior's death the *inter vivos* trust terminated, and having so terminated, Suzanne had no power to make a testamentary disposition of the corpus of the trust.

On this appeal, appellant seems to urge that the language of the will ''[i]ncome from trust goes to Polly at my demise'' must be interpreted as a testamentary act bequeathing the corpus of the *inter vivos* trust to appellant, or that as a matter of law, a bequest of income from a fund is a bequest of the fund. Furthermore, it is argued that at the time of making the will the testatrix had a future interest in the trust *res,* conditioned upon the prior death of her husband, which she had a right to will away.

The appellant cites many cases to the effect that in order to avoid intestacy, a court will strive to reach a construction favorable to testacy where the language used reasonably admits of such construction, and also cites familiar cases to the effect that it is the duty of the court to ascertain the intention of the maker of a will from the instrument read as a whole, and to

give effect thereto if possible. While these are true statements, they are not here controlling. A fair reading of the will and of the provisions of the *inter vivos* trust, and the 1943 amendment thereto, supports the trial judge's interpretation of the will and of the effect of the language used in the trust instrument and amendment thereto. ■ In accordance with a stipulation of the parties, this matter is before us with no findings of facts and conclusions of law; this court, therefore, will presume that the trial court found every fact essential to support the judgment, and such findings will be implied by us. (*Annin* v. *Belridge Oil Emp. Federal Credit Union,* 119 Cal.App.2d 900 [260 P.2d 295]; *Childers* v. *Childers,* 74 Cal.App.2d 56 [168 P.2d 218]; *Korry of California* v. *Lefkowitz,* 131 Cal.App.2d 389 [280 P.2d 910].) In the latter case it is said at page 391: ''In the absence of findings of fact and conclusions of law every intendment is in favor of the judgment. (*Bryant* v. *Marstelle,* 76 Cal.App.2d 740, 744 [173 P.2d 846].) In such circumstances 'the reviewing court will assume that the trial court found every fact essential to support the judgment, and when a transcript of the evidence is before the reviewing court it will not weigh the evidence to determine what is true and what is not, but it will search the record for the purpose only of determining whether there is substantial evidence supporting the judgment and will resolve all doubts in favor of the judgment. [Citations.]''

■ It is settled law that a will is construed as applying to and disposing of the estate in its condition at the time of death. (*Estate of Chamberlain,* 56 Cal.App.2d 458, 461 [132 P.2d 488].)

■ A testator may dispose only of such property as is subject to his testamentary power, and the testator is presumed to know the law. (*Estate of Klingenberg,* 94 Cal.App.2d 240 [210 P.2d 514].)

■ In interpreting a will, a court should view the will in a manner which will reveal the intent of the testator as disclosed by the language in the will and, if possible, effectuate that intent. This does not mean, however, that a testator may validly dispose of nonexistent property.

■■ Extrinsic evidence may be viewed only as it explains and interprets language used, but cannot be used to show an intent different from that disclosed by the language of the will. (*Estate of Sandersfeld,* 187 Cal.App.2d 14 [9 Cal.Rptr. 447].) The argument that an interpretation favor-

ing testacy should be sought does not vitiate the foregoing rules. Probate Code, section 102, provides in part that an interpretation ". . . is to be preferred which will prevent a *total* intestacy." (Emphasis added.) There is not total intestacy here.

The instant holding of the trial court finds solid bottom when the provisions of the amendment to the *inter vivos* trust are read carefully. Whether or not the testatrix mistakenly believed that she had the legal power of testamentary disposition over the trust income would not give her such power as appears from the very language of the amendment to the trust instrument that upon George, Senior's death the corpus thereof went to Suzanne and the trust ceased to exist. The language in the will is clearly restricted to a gift of income; there was no income from the trust after its termination, and the will is not susceptible of an interpretation that "income" means "corpus." The interpretation urged by appellant would require a strained and unrealistic approach on the part of the trial or appellate court if the plain meaning of definite words were so corrupted.

Affirmed.

Fox, P. J., and Ashburn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 4, 1961. Traynor, J., was of the opinion that the petition should be granted.