[Civ. No. 17140.   Second Dist., Div. Three.   May 17, 1950.]

CARL W. BROWN, Respondent, v. TROPHY-CRAFT COMPANY (a Corporation), Appellant.

George Boshae for Appellant.

Borah & Borah for Respondent.

WOOD, J.—Action to recover money allegedly due as commission under an oral contract of employment. After an accounting, judgment was entered in favor of plaintiff for $3,280.21. Defendant appeals from the judgment.

On February 2, 1946, plaintiff and defendant entered into an oral agreement which provided in part as follows: Plaintiff would sell trophies and bronze articles manufactured by defendant; his sales territory was Arkansas, Oklahoma, Louisiana and Texas; his compensation would be a commission of 10 per cent on all sales made in those states, irrespective of whether the sales resulted from the efforts of plaintiff; plaintiff would be paid $100 a week, in advance, and would be given an accounting once each month. Pursuant to that agreement plaintiff went to said territory (to which the State of Mississippi was added later) and worked as a salesman. Thereafter the sales of defendant's goods in that territory increased substantially. About June, 1946, plaintiff returned to Los Angeles where he worked in defendant's factory about seven weeks. Then he went back to his territory, and a few weeks thereafter he was notified by the defendant that his employment would be terminated on August 30, 1946. On said date of termination of plaintiff's employment, some of the goods which had been ordered by customers in his territory had not been delivered by defendant. Subsequently, deliveries were made of part of the goods but plaintiff was not paid a commission on the sale of such goods. During the period he was employed by defendant, plaintiff was paid $100 a week or a total sum of $3,200. He was not given an accounting, however, during such period. After receiving notice of termination of his employment, plaintiff demanded an accounting, and was told by Mr. Gill that he had no "commissions coming."

Defendant asserts that plaintiff was not entitled to a commission on any sales if the goods were delivered after his employment had been terminated; and that the sums of $100, which were paid to plaintiff each week, were to be deducted from his commissions when earned.

Plaintiff asserts that he is entitled to a commission on all sales made in the five states (above mentioned) during the period of his employment—regardless of whether delivery of

the goods was made before or after his employment was terminated. He also asserts that the sum of $100 a week received by him was a guaranteed compensation which was to be deducted from commissions only when the commissions for the same period exceeded such amount.

The trial court found that by the terms of the oral agreement plaintiff was to receive from defendant a commission of 10 per cent on all sales made by defendant and solicited by plaintiff in the States of Texas, Arkansas, Oklahoma, Louisiana, and Mississippi; that plaintiff was to receive a commission of 10 per cent on all other sales made by defendant in those states, which sales were the result of orders received, taken, or solicited during the period of plaintiff's employment, whether solicited by plaintiff or not; and that "plaintiff earned and became entitled to receive said commissions when such merchandise was shipped to the customer, and without regard as to whether or not plaintiff was still employed by defendant." It also found that by the terms of the agreement defendant was to pay plaintiff $100 a week as a "guaranteed minimum compensation and expense account to plaintiff"; that the parties further agreed that an accounting should be taken each month; that if at the end of each month the commissions earned by plaintiff exceeded "his guaranteed minimum paid to him during said monthly period, the defendant agreed to pay to plaintiff the amount of such excess; that if at the end of said monthly period, the commissions due plaintiff did not equal or were less than the guaranteed minimum paid during said monthly period, the plaintiff and defendant should take nothing further from each other on account of said monthly period."

Appellant contends that the evidence was not sufficient to support those findings.

Plaintiff testified that at the time of entering into the agreement Mr. Gill, sales manager of defendant corporation, told him that he was to receive a 10 per cent commission on all merchandise sold (in his territory) while he (plaintiff) "was in the employ of the company," and that he was to receive an "expense account of $100 per week minimum"; he and Mr. Gill then discussed the shortage of metals; plaintiff asked Mr. Gill what would happen if defendant could not "deliver orders" and Mr. Gill stated, "We will keep your orders on file and they will be a backlog for your territory"; there was no discussion as to what would be done about commissions in the event plaintiff's employment should be terminated while

a backlog of orders was in existence; Mr. Gill told plaintiff that he had had salesmen "who had $90,000 in the backlog." Plaintiff testified further that during the period of his employment he sent orders to defendant amounting to approximately $59,400.

A witness, called by defendant, testified on direct examination that he was formerly employed by defendant; about May, 1946, while so employed, he had a conversation with plaintiff regarding their employment; plaintiff said his agreement provided that he "would definitely receive a 10% commission on all merchandise sold in his territory, regardless of when it was delivered."

Mr. Gill, called as a witness by defendant, testified that he told plaintiff the defendant would pay him "10% commission on all net sales into an assigned territory during the time that he was employed" by defendant, and defendant would advance him $100 weekly as a drawing account which would be deducted from commissions earned; he explained to plaintiff that he (plaintiff) was not going into a new territory—that formerly defendant had representatives in that territory and had advertised therein and, inasmuch as defendant was giving plaintiff commissions on established business, it was understood that when plaintiff's employment was terminated there would be no further commissions payable to him; he told plaintiff that defendant had a right to discharge him at any time, and if he were discharged when he had a backlog of orders he would not get any commission on those orders. He testified on cross-examination that during the period plaintiff worked in defendant's factory he was working at defendant's direction, and he had no opportunity to take orders; during said period plaintiff was "charged" with the $100 a week which he was paid; plaintiff worked in the factory knowing that the money would have to be returned and that he was working for no compensation.

Mr. Metz, vice president of the defendant corporation, testified that he talked with plaintiff in January, 1946, and explained to him that he was being hired as a salesman, a collector, or to work as defendant might direct; at that time it was agreed that defendant would advance plaintiff $100 per week "against earned commissions while in the territory in the interest of the company"; it was agreed that defendant would pay plaintiff 10 per cent on net shipments "into his assigned territory during the period he was employed"; the witness

told plaintiff that upon termination of his employment there would be no further advances or commissions paid.

There was a conflict in the evidence as to the provisions of the oral agreement. The evidence, viewed in the light most favorable to the plaintiff, shows that Mr. Gill told plaintiff that he would receive 10 per cent commission on all merchandise sold while he was in the employ of the company; that plaintiff asked Mr. Gill what would happen in the event defendant was unable to deliver merchandise ordered in his territory, and he replied that defendant would file such orders as a backlog for plaintiff's territory; that there was no discussion as to what would be done about commissions if plaintiff's employment should be terminated when there was a backlog of orders; and that during the period of plaintiff's employment he sent defendant orders amounting to approximately $59,400. During the period plaintiff was employed no accounting was made by defendant, and no commissions in excess of $100 a week were paid to plaintiff. Plaintiff did not know to what extent deliveries had been made in his territory. If defendant had withheld deliveries of all merchandise ordered in plaintiff's territory until after the termination of plaintiff's employment, the plaintiff, according to defendant's evidence regarding the oral agreement, would have been deprived of all commissions and would have been indebted to defendant for the total amount of the weekly sums advanced to him, namely, $3,200. The trial judge said that he did not believe the testimony on behalf of defendant regarding the provisions of the agreement. It could be inferred from the evidence that it was the intention of the parties that plaintiff would receive a commission on all sales in his territory, which were the result of orders received or solicited during the period of plaintiff's employment, whether the goods were delivered before or after the termination of his employment.

Furthermore, it is the ''general rule that a principal cannot deprive his agent of commissions on goods ordered through him by discharging him before the orders are filled.'' (*Gantner & Mattern Co.* v. *Hawkins,* 89 Cal.App.2d 783, 788 [201 P.2d 847].) '' 'If the contract contemplates that the agent shall receive compensation for sales of which the agent was the procuring cause, the agent is entitled to a commission on sales procured by him although the sales were actually consummated by the principal after the termination of the agency,' . . . .'' (*Zinn* v. *Ex-Cell-O Corp.,* 24 Cal.2d 290, 296 [149 P.2d 177].)

As to the finding that the payment of $100 a week to plaintiff was a guaranteed minimum compensation, plaintiff testified that Mr. Gill told him that he would receive an expense account of $100 a week "minimum." The fact that plaintiff was paid $100 per week during the seven weeks he worked in defendant's factory, during which time he had no opportunity to solicit orders, would indicate that such sums were intended as a compensation. It would not seem reasonable that plaintiff was required, as asserted by defendant, to return such payments to defendant.

The findings of the trial court regarding the provisions of the oral agreement were supported by the evidence.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied June 8, 1950, and appellant's petition for a hearing by the Supreme Court was denied July 13, 1950.