Filed 1/27/16  DeMattio v. SolarCity Corp. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| KEN DEMATTIO et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> SOLARCITY CORPORATION et al., <br><br> Defendants and Respondents. | B259222 <br><br> (Los Angeles County <br> Super. Ct. No. BC490482) |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Elihu M. Berle, Judge.  Affirmed.

Marlin & Saltzman, Stanley D. Saltzman, Kiley L. Grombacher, Leslie H. Joyner; Boren, Osher & Luftman, Paul K. Haines; Law Offices of Louis Benowitz and Louis Benowitz for Plaintiffs and Appellants.

Nixon Peabody, Michael R. Linsday and Paul R. Lynd for Defendants and Respondents.

**INTRODUCTION**

Plaintiffs and appellants Kevin DeMattio, James Thiel, and Donald Giberson (plaintiffs)—former outside sales representatives for defendant and respondent SolarCity Corporation (defendant)—filed a class action against defendant alleging that two payment provisions in their commission plans were unenforceable and violated the Labor Code. On appeal from the trial court's order denying class certification, plaintiffs do not challenge the sufficiency of the evidence in support of the trial court's adverse rulings on certain of the elements necessary for class certification or contend that the court abused its discretion in denying the motion. Instead, they contend that the trial court misapprehended their theory of recovery and, as a result, erroneously concluded, as a matter of law, that plaintiffs' unconscionability theory could not be adjudicated on a classwide basis because the claims pleaded would not allow plaintiffs to assert that defense in support of an affirmative recovery. According to plaintiffs, that conclusion was based on improper criteria and an erroneous legal assumption that warrant reversal of the order denying class certification.

We hold that the trial court did not commit the legal errors claimed by plaintiffs and, instead, ruled on the unconscionability issue as framed by the moving and opposing papers. Moreover, regardless of whether the trial court's ruling concerning the affirmative use of unconscionability was correct, the trial court's alternative ruling—that the unconscionability theory raised legal issues that were too numerous to satisfy the commonality element—is unchallenged by plaintiffs on appeal and the denial of the motion on that basis must therefore be affirmed. In addition, because plaintiffs did not challenge on appeal the trial court's adverse ruling on the ascertainability element, that finding independently supports affirmation of the order denying class certification.

# FACTUAL BACKGROUND[1]

During the class period, defendant, a solar energy company, provided solar energy to homeowners, businesses, and government organizations. It did so by providing full-service energy system design, financing, installation, monitoring, and repair services. Defendant offered homeowners and businesses long-term contracts to lease solar energy systems or purchase energy directly.

Outside sales representatives, such as the named plaintiffs, sold solar energy systems to customers in the form of either a cash sale or a lease. In a lease transaction, the customer typically agreed to make monthly payments to lease the system from defendant for a period of 20 years. The vast majority of solar energy systems that defendant provided to residential customers were lease transactions, as opposed to cash sales.

Outside sales representatives were responsible for explaining defendant's products to potential customers, making an initial site assessment, and obtaining the customer's signature on the original contract. Plaintiffs' evidence suggested that once the contract was signed, the sales representative had few, if any, further responsibilities concerning the consummation of the transaction. Defendant, however, submitted evidence that sales representatives had continuing responsibilities throughout the time period that the transaction was being consummated.[2]

---

[1] Because plaintiffs do not challenge the sufficiency of the evidence in support of the trial court's adverse findings on certain elements necessary for class certification and instead raise only issues of law on appeal, a detailed summary of the evidence submitted in support of and opposition to the class certification motion is unnecessary. Accordingly, we set forth only a summary of basic facts to provide context for the legal discussion that follows.

[2] The factual dispute over the job responsibilities of defendant's outside sales representatives after a contract is signed is a merits-based issue that cannot be resolved at the class certification stage.

The point at which a solar system is fully installed and activated is called the "interconnection." It was not uncommon for an interconnection to take six or seven months from the date the contract was signed.

Outside sales representatives were compensated pursuant to annual commission plans. The plans showed how much the representatives would be paid in commissions on sales and they included payment schedules explaining that a portion of the commission on a transaction would be paid within a specified period after the signing of the contract and the rest of the commission payments would be made based on milestones set forth in the commission plans.[3] In all transactions—lease or sale, residential or commercial—the entire commission was not paid until after the job reached interconnection. The final commission was based on the size of the job at interconnection. If a job cancelled or was reduced in size after the customer signed the contract, any partial commission payments that were advanced prior to interconnection were reconciled against later commission payments to account for the cancellation or reduction in size of the transaction. Plaintiffs referred to this reconciliation as a chargeback. If the size of a job increased after a customer signed the contract, the final commission payment would be based on the increased size of the job after interconnection.

Between 2008 and 2012, the annual commission plans varied from year to year. For example, the 2008 plan had no provisions for advances on commissions, chargebacks, or termination of the right to commissions at the end of employment. In 2009, defendant substantially revised its commission plans for outside sales representatives and they included, inter alia, provisions for the termination of the right to a commission at the end of employment—the so-called forfeiture provision—and a provision that allowed defendant to reconcile partial commission advances against future commissions in the event a sale cancelled or was downsized prior to interconnection—the

---

[3] For example, plaintiff DeMattio's 2009 commission plan provided that for a residential lease transaction, the outside sales representative would receive 50% of the commission after the expiration of the 30-day cancellation period and 50% at interconnection.

4

so-called chargeback provision.[4] The terms and conditions of the 2009 through 2011 plans were substantially similar, except for the payment schedules.

## PROCEDURAL BACKGROUND

### A. Operative Complaint

In the operative complaint, plaintiffs asserted causes of action for breach of contract, failure to pay wages in violation of Labor Code sections 204, 218.5, 218.6, 221, 222, and 223; failure to pay wages upon termination of employment in violation of Labor Code sections 201 through 203; failure to provide accurate itemized wage statements in violation of Labor Code section 226 et seq.; failure to keep accurate payroll records in violation of Labor Code section 1174;[5] and civil penalties under the Private Attorneys General Act (PAGA), Labor Code section 2698 et seq. Plaintiffs filed the action on behalf of themselves, as well as on behalf of a putative class defined as "All current and former outside sales representatives, and similarly-titled employees, who worked for defendant in California during the Class Period commencing on or after four years prior to the filing of this action." The gravamen of the complaint was that the forfeiture and chargeback provisions were unenforceable under the parties' contracts and under certain provisions of the Labor Code.

---

[4]   For example, the 2009 commission plan submitted in opposition to the class certification motion provided in paragraph 10(a)(3) as follows: "[W]here a contract does not reach interconnection then any 1st or 2nd installment payments shall be set-off against future payments. The final installment payment is not earned until interconnection."

[5]   The trial court granted defendant's motion for summary adjudication of this claim.

5

**B.     Motion for Class Certification**

Plaintiffs filed a motion for class certification that defined two putative classes: "The Wage Forfeiture Class—All former Outside Sales Representatives (OSRs) and similarly-titled employees, who worked for Defendant in California during the relevant time period" and "The Wage Deduction Class—All current and former Outside Sales Representatives (OSRs) and similarly-titled employees, who worked for Defendant in California and were subject to the 2008-2011 Commission Plans."

The motion asserted that the "*primary focus* of this certification motion pertains to a post-termination commission *forfeiture provision*, which is present in all seven of the Commission Plans." (Italics added.) The motion further provided that "as a result of [defendant's] imposition of the unlawful forfeiture provision in its Commission Plans, [plaintiffs] and more than 81 [outside sales representatives] have been denied earned commission wages. . . . *[T]his wage forfeiture provision is unconscionable* and . . . the Court should set aside the provision for the benefit of all the class members." According to plaintiffs, the same classwide evidence which supported their claims under the wage forfeiture provision also "support[ed] certification of [p]laintiffs' *secondary claims . . .* based on [the alleged Labor Code violations]." Moreover, in setting forth the law applicable to the determination of their motion, plaintiffs devoted almost three pages of their points and authorities to a discussion of the doctrine of unconscionability. In addition, the common evidence that plaintiff claimed supported certification was all relevant to whether the provisions were unconscionable. And, when discussing the element of commonality, plaintiffs stated that the "predominant legal question presented by the facts here is whether the challenged forfeiture provisions in [defendant's] Commission Plans . . . are enforceable under California law." Plaintiffs also discussed unconscionability at length in their reply to the opposition, stating, inter alia, that the evidence demonstrated that the unconscionability of the contract provisions in issue could be determined on a classwide basis. The reply further asserted that plaintiffs' claims were based on the "forfeiture/deduction provisions challenged as unconscionable herein"

6

and that "the legality of the claw back [i.e., chargeback] provisions is a matter of contract interpretation."

Defendant opposed the class certification motion, arguing, inter alia, that unconscionability was an affirmative defense, not an independent claim for relief, and therefore plaintiffs had not alleged a cause of action that would allow an affirmative recovery under the unconscionability doctrine. Defendant also argued that even assuming plaintiffs could base their claims on an unconscionability theory, that theory could not be adjudicated on a classwide basis because common issues of law and fact did not predominate over those that would require individualized adjudication.

## C. Trial Court's Order Denying Certification[6]

At the hearing on plaintiffs' class certification motion, the trial court heard extensive argument from the parties and then orally pronounced its ruling denying the motion. The trial court began its detailed analysis by correctly stating the well-established legal principles applicable to its determination of the certification question, including that plaintiff had the burden of establishing "both an ascertainable class and a well defined community of interest."

On the issue of ascertainability, the trial court concluded as follows: "The Court: The first of the two broad requirements for class certification is an ascertainable class. . . . [¶] Ascertainability requires a class definition that is precise, objective, and presently ascertainable. Citing *Global Minerals v. Superior Court* (2003) 113 Cal.App.4th 836. In this case plaintiff seeks to certify two classes or subclasses. One is entitled a wage forfeiture class that seeks to—or consists of [outside sales representatives] who worked for defendant during the relevant time period. And secondly, the wage deduction class that seeks to represent [outside sales representatives] who worked for defendant and were subject to 2008, 2011 commission plans. [¶] On the surface it appears that there's really no difference in the two descriptions, at least in the definition of the two classes. One

---

[6]     Because plaintiffs' appeal raises an issue as to the proper interpretation of the trial court's order denying class certification, we quote extensively from that order.

seeks to represent outside sales representatives employed during the relevant time period, which I assume is the same time period that we're talking about, 2008 to 2011, but the description does not define what the time period is . . . that supports certification. That's not a major obstacle. It could be inserted. [¶] If the unidentified time period is governed by the years in which the commission plans contained the challenged termination provision, then the definition of the wage forfeiture class may be identical to the wage deduction class. [¶] I also note that the wage forfeiture class definition does include the 2008 period. Plaintiffs did not submit evidence of the 2008 plan to show it contained a termination provision. However, [defendant] submitted exhibits containing plaintiff DeMattio's 2008 plan and plaintiff Thiel's 2008 plan, and while different, neither contains a provision regarding the prerequisite of being employed at the time a commission was earned. [¶] I also note that the wage forfeiture class does not include any terms specific to termination. And that is the key clause that plaintiffs are challenging. The wage forfeiture class definition does not contain any terms to readily identify class members who are terminated and had a job interconnect thereafter. The past description does not describe a claim that can be explained to putative class members and put them on notice of their ability to potentially pursue a claim in the action. [¶] Defendant's evidence shows that some putative class members never sold any solar job or did not have any jobs that interconnected after termination such that the commission was earned or they were no longer employed. And therefore, the description of the wage forfeiture class may be overbroad in that it may include employees who simply worked for [defendant] but were paid for all jobs or otherwise not owed any commissions at all. [¶] As for the wage deduction class, while it is more specific in identifying a liability period, which is set forth as 2008 through 2011 plans, there is no reference to the challenged wage deduction provision. It is unclear from plaintiffs' papers exactly the provisions from the 2008 through 2011 plans [that are] the focus of the class. If it is the chargeback provision, and that is that because commissions were not earned until interconnection, then advance commission payments for jobs that never interconnected reconciled with future commissions. If that's the intent, class definition is not couched in

8

any objective terms that would set forth and give notice of such provision. [¶] Additionally just like the wage forfeiture class, plaintiffs have not provided evidence of a 2008 plan as it relates to the wage deduction class. And defendant's evidence of DeMattio and Thiel's 2008 plans do not contain any chargeback provision. So it may be that the wage deduction class is also overbroad. But *presumably* definitions can be corrected and modified if those are the only deficiencies." (Italics added.)

On the issue of a sufficient community of interest, the trial court accurately noted, inter alia, that the "great majority of plaintiffs' motion papers is spent discussing unconscionability." The trial court then discussed the doctrine of unconscionability in the context of the commonality element and reasoned as follows. "The Court: Turning to the factor that must be considered by the Court of community of interest. The elements of a community interest requirement are predominant common questions of law or fact, class representatives with claims or defenses typical of the class, and class representatives who can adequately represent the class. . . . [¶] As the California Supreme Court held in *Sav-On* [*Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319], at 326 [(*Sav-On Drug Stores*)], the central question in a class certification motion is whether the questions that will arise in the action are common or individual, not plaintiffs' likelihood of success on the merits of their claims. The Court is instructed not to focus on potential conflicting issues of fact or law on an individual basis, but rather the Court must evaluate whether the theory of recovery advanced by plaintiff is likely to prove amenable to class treatment. Citing *Jaimez v. Daiohs* (2010) 181 Cal.App.4th 1286. [¶] However, the class action will not be permitted if each member is required to litigate substantial and numerous factually unique questions before a recovery may be allowed. If the class action will splinter into individual trials, common questions do not predominate and litigation of the action in a class format is [not] appropriate. Citing *Arenas v. El Torito* (2010) 183 Cal.App.4th 723. [¶] As I already noted, the causes of action alleged in the second amended complaint are breach of contract, failure to pay wages, failure to provide accurate itemized wage statements, and PAGA penalties for the underlying Labor Code violations. *The great majority of plaintiffs' motion papers is*

9

*spent discussing unconscionability*. But unconscionability is not a theory of recovery. Plaintiffs argue by imposing the forfeiture provisions on the class members, [defendant] has enabled itself to retain the fruits of class members' substantial labor. Plaintiffs allege that this wage forfeiture provision is unconscionable and the Court should set aside the provision for the benefit of all class members. [¶] In the case of *California Grocers Association v. Bank of America* (1994) 22 Cal.App.4th 205, the Court of Appeal stated, 'the doctrine of unconscionability has historically provided only a defense of enforcement of a contract and normally cannot be used offensively. As embodied in Civil Code section 1670.5, the doctrine is phrased in defensive terms: A Court may refuse to enforce an unconscionable contract or may enforce the remainder of a contract without an unconscionable clause. The statute does not in itself create an affirmative cause of action but merely codifies the defense of unconscionability.' [¶] In this case plaintiffs appear to be asserting that a classwide determination of unconscionability would [be] establish[ed] through common questions of law and fact to claims of class members. However, reviewing the complaint, we note that the plaintiffs' first cause of action refers to breach of contract, namely, that plaintiff seeks to enforce the terms of the contract, putting individual plaintiff and class member contracts with the defendants. It does not appear from plaintiffs' arguments how plaintiffs will be able to seek enforcement of a contract that plaintiffs claim to be unconscionable. [¶] Unconscionability is a determination of contract invalidity. Normally it's asserted as a defense to enforce a contract. A claim is not being made at this stage against plaintiff with regard to enforcing a contract to which the plaintiff could assert a defense of unconscionability. In essence plaintiff is seeking first to declare a contract to be, at least provisionally, . . . invalid because of unconscionability, then seek[s] to reform the contract. And defendant has not had an opportunity to weigh in on that issue, if there was a claim to reform, as to whether the parties can be placed in a position that will recognize all their rights and liabilities and allow under these circumstances at this time to reform a contract. [¶] Secondly, plaintiffs do not seek to rescind the contract, to place the parties in a position where they were before the contract was entered into and perhaps an

10

alternative claims, I guess, for moneys had and due based upon services rendered and some other common count theory. [¶] What we have here is a claim for breach of a contract. In order to have a claim for breach of contract, you have to have enforcement of the contract. Plaintiffs also allege failure to pay wages, but that's failure to pay wages under the terms of the contract. [¶] So plaintiffs' essential approach to the case is to first have the contract to be determined to have unconscionable provisions and then to invalidate those provisions but not to invalidate the entire contract, and then to litigate on a classwide basis the remainder of the contract provisions. [¶] *It is unclear how this theory can proceed* [*on*] *a class basis because there are numerous* [legal] issues, *first among which is what provisions are going to be left and how can the contract be reformed to adjust the rights and liabilities of the parties if those provisions that plaintiffs believe to be unconscionable are stricken.* [¶] *The courts are instructed to consider and interpret the contract as a whole and in context rather than interpret provisions of isolation. So we would have to review the entire terms of the contract to see how the alleged unconscionable provisions fit into the contract and to* [*determine*] *whether the contract, as a whole, could further be enforced without the provisions that plaintiff is relying on being enforceable.* [¶] . . . [¶] . . . So at this stage of the proceeding and in this context, [a] motion for [class] certification, the Court does not believe that this case is an appropriate posture to be able to be certified as a class action given the alleged causes of action and the framework on which the plaintiff has presented the case *as arguing that the common issues relate to the declaration of certain provisions of the contract being unconscionable.*" (Italics added.)

After discussing the adequacy element and determining that two of the three putative class representatives could not adequately represent the class, the trial court summarized its ruling as follows: "So in sum, *the Court is going to find that based upon the evidence submitted, that the claims as asserted under the plans alleged do not support common issues that predominate over individual issues.* And because the claims that are relied upon by plaintiff are not the gravamen of the causes of action asserted by plaintiff, the Court finds that this case is not amenable to class treatment, and the Court den[ies]

11

the motion for class certification.  [¶]  The Court also notes that the descriptions of the class is not sufficiently descriptive of the claims, but that could be corrected.  So that's not the main basis of the Court's ruling.  [¶]  The Court also finds that neither Mr. DeMattio [nor], Mr. Giberson are adequate class representatives."  (Italics added.)

## DISCUSSION

### A.    Standard of Review

The California Supreme Court has described the standard for reviewing a ruling on a class certification motion as follows:  "Code of Civil Procedure section 382 authorizes class actions 'when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . .'  (Code Civ. Proc., § 382.)  A trial court is generally afforded great latitude in granting or denying class certification, and we normally review a ruling on certification for an abuse of discretion.  [Citation.]  We do not apply this deferential standard of review if the trial court has evaluated class certification using improper criteria or an incorrect legal analysis:  '[A] trial court ruling supported by substantial evidence generally will not be disturbed "unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made . . . ."'  [Citations.]  The reviewing court 'must examine the trial court's reasons for denying class certification.'  [Citation.]  When reviewing an order denying class certification, appellate courts 'consider only the reasons cited by the trial court for the denial, and ignore other reasons that might support denial.'  [Citation.]"  (*Jaimez v. Daiohs USA, Inc.* (2010) 181 Cal.App.4th 1286, 1297-1298.)

### B.    Legal Principles:  Class Action Procedure

According to the Supreme Court, the requirements for class certification are as follows:  "Drawing on the language of Code of Civil Procedure section 382 and federal precedent, we have articulated clear requirements for the certification of a class.  The party advocating class treatment must demonstrate the existence of an ascertainable and

sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives. [Citations.] 'In turn, the "community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class."' [Citations.]" (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021 (*Brinker*).)

The Supreme Court has further observed that the class action procedure is based on equitable principles. "'The class action is a product of the court of equity—codified in section 382 of the Code of Civil Procedure. It rests on considerations of necessity and convenience, adopted to prevent a failure of justice.'" [Citation.] "'The certification question is "essentially a procedural one that does not ask whether an action is legally or factually meritorious." [Citation.] A trial court ruling on a certification motion determines "whether . . . the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants." [Citations.]' [Citation.]" (*Lopez v. Brown* (2013) 217 Cal.App.4th 1114, 1126.)

## C. Theory of Recovery and Unconscionability

Although expressed in varying terms, the central theme of plaintiffs' opening brief concerns the trial court's ruling on the unconscionability issue. According to plaintiffs, the trial court "misapprehended" their theory of recovery and, as a result, denied class certification solely on the grounds that plaintiffs' theory of recovery was limited to the issue of the unconscionability of the forfeiture and chargeback provisions and plaintiffs had not alleged a cause of action that would allow an adjudication of that affirmative defense.

Plaintiffs' contentions on appeal concerning the unconscionability of the forfeiture and chargeback provisions are based on a fundamental mischaracterization of their motion for class certification and the trial court's ruling denying it. First, the trial court

13

did not "misapprehend" plaintiffs' theory of recovery. As the trial court noted, "[t]he great majority of plaintiffs' motion papers is spent discussing unconscionability." In addition, plaintiffs expressly stated that the primary focus of their motion was the enforceability of the forfeiture and chargeback provisions—i.e., whether those provisions were unconscionable. And, as noted above, defendant joined the issue concerning unconscionability by arguing, inter alia, that it was an affirmative defense that could not independently support a recovery by plaintiffs on their contract claim. Thus, the trial court appropriately addressed the major issue raised by the parties' respective briefs by discussing the procedural problems it perceived with adjudicating an unconscionability defense in the framework of the causes of action pled.

Second, although the trial court discussed at length whether the issues, as framed by the pleadings and motion papers, would allow an adjudication of the unconscionability theory and concluded that they may not,[7] the trial court went on to determine, in the alternative, the merits of the commonality element by assuming, arguendo, that unconscionability was adequately raised for adjudication by the pleadings. As set forth above, the trial court expressly ruled that "plaintiffs' essential approach to the case [i.e., their theory of recovery] is to first have the contract to be determined to have unconscionable provisions and then to invalidate those provisions but not to invalidate the entire contract, and then to litigate on a classwide basis the remainder of the contract provisions. [¶] *It is unclear how this theory can proceed* [*on*] *a class basis because there are numerous* [*legal*] *issues, first among which is what provisions are going to be left and how can the contract be reformed to adjust the rights and liabilities of the parties if those provisions that plaintiffs believe to be unconscionable are stricken.* [¶] *The courts are instructed to consider and interpret the contract as a whole and in context rather than interpret provisions* [*in*] *isolation. So we would have to review the entire*

---

**7** We do not need to reach the issue of whether the trial court's ruling—that the defense of unconscionability could not be asserted offensively in the context of a breach of contract claim—was correct because the trial court's unchallenged alternative finding on the commonality issue supported its denial of the class certification motion.

*terms of the contract to see how the alleged unconscionable provisions fit into the contract and to [determine] whether the contract, as a whole, could further be enforced without the provisions that plaintiffs are relying on being enforceable.* [¶] . . . [¶] So at this stage of the proceeding and in this context, [a] motion for class certification, the Court does not believe that this case is an appropriate posture to be able to be certified as a class action given the alleged causes of action and the framework on which the plaintiff has presented the case *as arguing that the common issues relate to the declaration of certain provisions of the contract being unconscionable.*" (Italics added.) Moreover, the trial court summarized its alternative ruling on the commonality element as follows: "So in sum, the Court is going to find that based upon the evidence submitted, . . . the claims as asserted under the plans alleged do not support common issues that predominate over individual issues."

It is clear the trial court ruled in the alternative that, even if plaintiffs could assert the unconscionability theory based on the claims pleaded, that theory was not amenable to class treatment. It expressly found the legal issues raised by plaintiffs' request to strike the challenged provisions from the various contracts, while at the same time requesting enforcement of the terms favorable to plaintiffs, were too numerous for classwide treatment. Therefore, contrary to plaintiffs' assertion, the trial court made an express adverse determination on commonality, as it related to their unconscionability theory, using proper criteria and correct legal assumptions.

Plaintiffs contend on appeal that their claims under Labor Code sections 221 through 223[8] were based on a theory of recovery that was wholly independent of their unconscionability theory. A fair reading of plaintiffs' motion for class certification, however, demonstrates that plaintiffs' primary focus was on the unconscionability of the

---

[8] Labor Code sections 222 and 223 do not appear to apply to the facts of this case. Labor Code section 222 applies to collective bargaining agreements and there is no allegation or evidence that such an agreement is at issue here. Labor Code section 223 applies to employers who "secretly" pay a lower wage than is provided for by contract or statute. Again, there is no allegation or evidence that defendant engaged in that practice.

15

plan provisions and that the alleged Labor Code violations were derivative of and dependent on a finding that the challenged contract provisions were unconscionable.

To establish a violation of an applicable Labor Code provision, it appears that plaintiffs would first be required to demonstrate that the express contract provisions in issue were unconscionable. For example, Labor Code section 221, which plaintiffs contend prohibits chargebacks under the commission plans, prohibits an employer from collecting or receiving "from an employee any part of wages theretofore paid by said employer to said employee." But, as plaintiffs concede, an advance on a commission not yet earned is not wages under the Labor Code. "The right of a salesperson or any other person to a commission depends on the terms of the contract for compensation. (*Steinhebel v. Los Angeles Times Communications, LLC* (2005) 126 Cal.App.4th 696, 705 [24 Cal.Rptr.3d 351] (*Steinhebel*); *Commeford v. Baker* (1954) 127 Cal.App.2d 111, 117 [273 P.2d 321] (*Commeford*). And 'it is clearly the law in California that a sales[person] is required to repay the excess of advances made over commissions earned when there is an express agreement on the part of the sales[person] to repay such excess.' (*Agnew v. Cameron* (1967) 247 Cal.App.2d 619, 622 [55 Cal.Rptr. 733], citing *Korry of California v. Lefkowitz* (1955) 131 Cal.App.2d 389, 391-392 [280 P.2d 910] (*Korry*).) [¶ . . . [¶] In sum, cases have long recognized, and enforced, commission plans agreed to between employer and employee, applying fundamental contract principles to determine whether a salesperson has, or has not, earned a commission." (*Koehl v. Verio, Inc.* (2006) 142 Cal.App.4th 1313, 1330-1331.)

Here, as noted, the 2008 commission plans did not contain a chargeback provision, and defendant contends that the 2009, 2010, and 2011 commission plans provided for partial advances on commissions, but also that the advances were not earned until interconnection and therefore any unearned advances could be reconciled against future commission payments. Thus, if defendant's interpretation of the commission plans is correct, the chargeback provisions would not violate Labor Code section 221, unless plaintiffs could demonstrate that it was unconscionable by showing, as a matter of fact,

16

that they earned their commission at the time the contract was signed and not at interconnection.

A similar analysis would apply to plaintiffs' contention that the forfeiture provision violates Labor Code sections 201 through 203, which apply to the willful failure to pay wages due to an employee who is discharged or quits. If plaintiffs' interpretation of the contract is accepted by the trier of fact, the forfeiture provision would not violate Labor Code sections 201 through 203 because no wages would be due an employee who was terminated or quit prior to interconnection, as the balance of the commission would not be earned under the commission plans. Thus, before a violation of those Labor Code sections could be shown, plaintiffs would be required to show that the forfeiture provision under defendant's interpretation was nevertheless unconscionable because substantially all of the work on a given sale was completed at the time the contract was signed.

### D. Waiver

Defendant argues plaintiffs have waived on appeal any challenge to the trial court's findings on certain elements necessary for class certification. According to defendant, plaintiffs' opening brief does not raise any issue concerning whether substantial evidence supported the trial court's adverse findings on ascertainability, commonality, and adequacy of representation. Absent such arguments in the opening brief, defendant contends that plaintiffs have waived any challenge to the trial court's adverse factual findings on those elements and that, as a result, any one of those findings supports the trial court's denial of the class certification motion, so long as the trial court ruled on those elements using the proper criteria and correct legal assumptions.

It is well established that issues and arguments that are not adequately raised in the opening brief are deemed waived on appeal. (*Telish v. State Personnel Bd.* (2015) 234 Cal.App.4th 1479, 1487, fn.4; *Fontenot v. Wells Fargo Bank, NA* (2011) 198 Cal.App.4th 256, 273, fn.12; *Chicago Title Ins. Co. v. AMZ Ins. Services, Inc.* (2010) 188 Cal.App.4th 401, 427-428.) As explained below, plaintiffs did not raise in the opening brief any issue

concerning the trial court's adverse findings on the ascertainability, adequacy, [9] and commonality elements.

### 1.  *Ascertainability*

The trial court expressly found that neither of the two class definitions described an ascertainable class.  Although the trial court suggested that the definitions might be modified to describe ascertainable classes, it nevertheless denied the motion based on the two definitions before it on the motion.  It was not asked to, nor did it, rule on any proposed modified definitions.  Thus, on appeal, the only issue before us is the trial court's actual ruling, not what it may have ruled if presented with modified definitions and further argument based thereon.

In their opening brief, plaintiffs ignored completely the trial court's ruling on the ascertainability element and made no affirmative attempt to demonstrate how they could have modified their class definitions to satisfy the ascertainability element.  They therefore waived any challenge to the ascertainability finding on appeal.  That finding, by itself, supported the trial court's denial of the class certification motion and requires us to affirm that ruling.

### 2.  *Commonality*

As discussed in detail above, the trial court ruled adversely to plaintiffs on the commonality issue, finding that an adjudication of plaintiffs' unconscionability theory would raise numerous legal issues concerning the reevaluation of the terms of the various commission plans to determine whether those terms could be enforced if the challenged forfeiture and chargeback provisions were stricken.  That finding by the trial court was

---

[9]      The trial court ruled that two of the three putative class representatives were inadequate.  Although the trial court did not make any express finding as to the adequacy of the third putative class representative, we presume the court concluded that he could adequately represent at least some portion of the two inadequately defined classes.  As a result, the trial court's findings on adequacy, by themselves, would not have supported a complete denial of the motion.

18

not mentioned, much less challenged, in the opening brief. Instead, plaintiffs argued that the trial court did not rule "one way or the other" on "commonality and predominance." Plaintiffs have therefore waived any challenge to the adverse finding on the commonality element. Accordingly, that finding, by itself, supported the trial court's denial of the class certification motion. Because, as explained above, the trial court did not rely on improper criteria or erroneous legal assumptions in reaching its commonality determination, we affirm the denial of the motion on that basis as well.

## DISPOSITION

The order of the trial court denying plaintiffs' motion for class certification is affirmed. Defendant is awarded its costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KUMAR, J.[*]

We concur:

TURNER, P. J.

BAKER, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19